# Elyton Land Company *v.* Mayor & Aldermen of Birmingham.

*Action to recover Taxes paid under Protest.*

1. *Constitutional restrictions on municipal taxation.*—The constitutional provision which declares that no municipal corporation "shall levy or collect a larger rate of taxation, in any one year, on the property thereof, than one-half of one per centum of the value of such property as assessed for State taxation during the preceding year" (Art. XI, § 7), not only limits the rate of taxation, but makes the State

[Elyton Land Co. v. Mayor and Aldermen of Birmingham.]

assessment for the preceding year the basis of value on which that rate shall be levied and collected; and this basis of value must govern, although the value of the property has been greatly increased by improvements since erected, or other supervening causes.

2. *Same; charter of the city of Birmingham.*—The provision contained in the 20th section of the charter of the city of Birmingham, which makes it the duty of the clerk, "if there was any property in the city on the 1st January of the then current year which was not in the city on the 1st January of the preceding year, or if there were improvements on the 1st January of the current year erected on property, materially enhancing the value of such property, which said improvements had not been erected on the 1st January of the preceding year," to assess such property or improvements at a fair valuation, and to "add the same to the valuation as assessed for State taxes for the preceding year" (Sess. Acts 1882-3, p. 301), is violative of the constitutional provision restricting municipal taxation, and is void.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellant, a private corporation, against the municipal authorities of the city of Birmingham, to recover taxes which plaintiff had paid under protest, as levied by the defendant for and during the year 1887; and was commenced on the 15th October, 1888. Defects of form in the pleadings were waived by the parties, and the case was submitted to the decision of the court without a jury, on the agreed facts. The court rendered judgment for the defendant, and its judgment is here assigned as error.

A. T. LONDON, for appellant.

CABANISS & WEAKLEY, *contra.*

CLOPTON, J.—Section 20 of the charter of the city of Birmingham, after conferring power on the Mayor and Aldermen to assess, levy and collect taxes on all property in the city for each year, not exceeding one half of one *per centum* on the value thereof, and providing that the assessments are to be made by the clerk of the city, from the State and county assessment books as assessed for State taxes the preceding year, further provides: "That if there was any property in the city on the first day of January of the then current year, which was not in the city on the first day of January of the preceding year; or, if there were improvements on the first day of January of the then current year erected on property, materially enhancing the value of such property, which said improvements had not been erected on the first

[Elyton Land Co. v. Mayor and Aldermen of Birmingham.]

day of January of the preceding year, and consequently not assessed for State taxation during the preceding year; then it shall be lawful for the clerk of the board, and it shall be his duty, to assess such property or improvements at a fair valuation, which said valuation shall be added to the valuation as assessed for State taxes for the preceding year, and the taxes so assessed shall be collected as the other assessments are collected."—Acts 1882-3, p, 301. Under the authority conferred by this section, the Mayor and Aldermen caused to be assessed for taxation, for the year 1887, personal property of the Elyton Land Company which was not within the city on the first day of January, 1886, but was within the city on the first day of January, 1887, and had not been assessed for State taxation during the preceding year. The company paid the taxes under protest, and brings this action to recover the amount.

The record raised the question, whether the provision of the charter conferring such authority infringes section seven of Article XI of the Constitution, which declares: "No city, town, or other municipal corporation, other than provided for in this article, shall levy or collect a larger rate of taxation, in any one year, on the property thereof, than one half of one per centum of the value of such property, as assessed for State taxation during the preceding year." The provision otherwise relates to the power to levy an additional rate for the payment of debts existing at the time of the ratification of the Constitution.

In the absence of constitutional restrictions, the General Assembly could confer on municipal corporations the power of taxation for municipal purposes, as to rate, assessment and subjects, which it possesses for State purposes. The inhibition against the power of municipal corporations to levy a greater rate of taxation than prescribed in the Constitution, operates a limitation on the power of the legislature to delegate authority for that purpose. In interpreting limitations upon legislative power in State constitutions, the nature and objects of the particular limitations should be kept in view, and the causes in which they originated considered in the light of history and former constitutions; and such force and operation given to the language employed, consistent with its legitimate meaning, as may fairly remedy existing and apprehended evils, and accomplish the desired ends. The framers of the Constitution were cognizant that no governmental power is more liable to abuse than the taxing power,

and also of its oppressive use and perversion by municipal authorities without regard to the interests of the citizen. They sought to prevent this abuse by restricting the exercise of the power within moderate and protective limits.

It is contended that the constitutional inhibition is against a higher rate of taxation, and was not intended to restrict the power of the municipality to assess taxes on property only which has been assessed for State taxation. This construction ignores the relation which the rate sustains to the valuation, and their inseparable connection. As all taxes, levied on property in this State, are required to be assessed in exact proportion to its value, an assessment or appraisement is an essential preliminary to the apportionment. Without an assessment made in the mode required by law, and by the proper officers, the tax is without support. This is the principle underlying the limitation upon the taxing power of municipal corporations. Experience having shown the insufficiency of a limitation upon the mere rate, which could be easily avoided by increasing the value, preserving at the same time the nominal rate, and that a mandate to the General Assembly "to restrict their power of taxation, assessment and contracting of debt," did not promote the ends proposed, it became apparent that the interests and protection of the citizen called for a restraint better guarded and more imperatively protective. The plan devised was to limit the rate to a specified per cent. of the value as assessed for State taxation.

The controlling principle is the adoption for cities, towns, and other municipal corporations, of the assessment of value made by the officers of the State, as the basis of the *per centum* to be levied, and the measure of the tax-payer's liability, thereby preventing different assessments, varying as to values, for the State and for the political sub-divisions, mere agencies for the administration of local government, and furnishing a rule by which whether the limited *per centum* had been exceeded could be ascertained by a mere arithmetical calculation. As we have said, a constitution, the revision of a former constitution, should be interpreted in the light of its predecessor. The corresponding provision in the Constitution of 1868 is found in section 36 of Article IV, which declared: "The General Assembly shall not have power to authorize any municipal corporation . . . to levy a tax on real and personal property to a greater extent than two *per centum* of the assessed value of such property."

The revisers, not being satisfied with the provision, the supposed defect in which consisted in the unrestrained power of the legislature to provide for assessments by municipal officers, materially altered it. Not only was the the *per centum* largely reduced, but also, in lieu of the words, *the assessed value of such property*, the phrase, *the value of such property as assessed for State taxation during the preceding year*, was inserted. When the clause thus altered is considered in connection with the omission from the present Constitution of the mandate of the General Assembly as to the restriction of the power of assessment, the purpose to provide the State assessment as the basis of the per-centage, and to prohibit special assessments for municipal taxation, confining municipalities to the exercise of the legislative function of levying taxes, becomes apparent. The effect is, to prescribe for municipal corporations the same rule which governs the levy of county taxes, except that the latter are assessed on the State assessment for the current tax year, and the former on the assessment for the preceding year. *Perry County v. Railroad Company*, 58 Ala. 546. The rsason for this difference may have been, that municipal taxes being generally levied before the completion of the State assessment for the current year, the assessment for the preceding year furnished the only certain and ascertained *data* for adjusting the levy. But, whatever be the reason, the expression, "one half of one *per centum* of the value of such property, as assessed for State taxation during the preceding year," excludes the inference, that the *per centum* may be of the value as assessed for municipal taxes by municipal officers, or as assessed by any other mode of assessment. *Expressio unius est exclusio alterius.* A constitutional inhibition, that no city, town or other municipal corporation shall levy a larger rate of taxation on property than a specified per cent. of a *designated* value, is the prohibition of a levy upon a different value. Under the Constitution, a city has no authority to levy a tax upon the value of property during the current tax year.

In *Mayor & Aldermen of Birmingham v. Klein, ante,* p. 460, speaking of this limitation, it is said *arguendo:* "Not only is the levy by any city to be made 'on the property thereof,' *i.e.*, the whole taxable property thereof, but it must be made on such property as assessed for State taxation during the preceding year." Though rules of statutory construction may be of limited application in the construc-

31

[Elyton Land Co. v. Mayor and Aldermen of Birmingham.]

tion of constitutions, in the absence of precedents in respect to similar constitutional provisions, the construction placed upon statutes somewhat analogous may shed light upon the question. Under a statute of Virginia, conferring on the supervisors authority to fix the amount of the county levies, and to order the levy "on all property assessed with State taxes in the county," it was held, that the county authorities could not levy a tax on any property, though in the county, which had not been assessed with State taxes.—*Va. & Tenn. R. R. Co. v. Washington County*, 30 Gratt. 471. Under the charter of Fort Wayne, Indiana, which provided that the assessment for local improvements should not, in any year, exceed ten per cent. of the value of the property as valued and assessed on the tax duplicate for State, county and municipal purposes, it was held, that there being no mode for determining the rate of assessment, to which property that could not be valued and assessed on the tax duplicate was liable, such assessment could not be made. *First Pres. Church v. Fort Wayne*, 36 Ind. 338; s. c., 10 Amer. Rep. 35.

It is argued, that this construction exempts all property which may have escaped State taxation during the preceding year, and all property which may come into existence after the completion of the State assessment. As to property which may escape State assessment, the municipal officers, on its discovery, have but to report the same to the assessor or collector, whose duty it then becomes to assess it; and as to property subsequently coming into existence, if it exists on the first day of January of the current year, its value will be assessed for State taxation during such year, and the municipality can levy a tax on such property in the succeeding year; the only sequence being to postpone the levy of the tax for one year. The power conferred on the municipal authorities by the charter of the city of Birmingham, where the value of real estate, as assessed for State taxation during the preceding year, has been materially enhanced on the first day of January of the current year by improvements erected thereon, which had not been erected on the first day of January of the preceding year, to assess such improvements at a fair valuation, and add such valuation to the value as assessed for State taxation, authorizes the municipal authorities to levy on such real estate a greater rate than one-half of one per centum of the value as assessed for State taxation during the preceding year, and violates the letter

[Winter v. Baldwin.]

of the Constitution.   Keeping in mind that an assessment is essential to support a tax upon valuation, and that none is provided or authorized other than the State assessment, and giving force and effect to each word and phrase, it follows that municipal corporations are inhibited by the Constitution to levy a tax on any property which had not been assessed for State taxation during the preceding year.   Of course, this decision only applies to taxes assessed on property as such according to value, not to other subjects of taxation, such as privileges and occupations.

We have carefully considered the question raised, because of its importance, and that it is brought for the first time before the court, and have arrived at the conclusion announced with some reluctance.   But, with the policy or expediency of the constitutional provision we have no judicial concern; our duty is to interpret it as ordained by the people.   We are forced to hold that the proviso to section 20 of the charter of the city above quoted, is unconstitutional.

Judgment reversed, and judgment here rendered in favor of plaintiff, for $4,838.18.

Reversed and rendered.