119 So.2d 887

**W. S. BREWBAKER, INC.**

v.

**CITY OF MONTGOMERY et al.**

3 Div. 752.

Supreme Court of Alabama.

June 25, 1959.

Rehearing Denied April 7, 1960.

Wm. S. Duke and Vincent S. Lamb, Montgomery, for petitioner.

Walter J. Knabe, Montgomery, opposed.

## PER CURIAM.

Petitioner filed suit against the City of Montgomery to recover taxes paid on October 16, 1951, allegedly under mistake of fact or law. Demurrers to the six counts of the complaint, as amended, were sustained and petitioner took a nonsuit with leave to appeal. The Court of Appeals affirmed the judgment of the Circuit Court.

■ Count 4 of the complaint was a common count in code form. The Court of Appeals held that the demurrer to that count was correctly sustained because of a misjoinder of the Tax Assessor with the City. This point was raised by ground 15 of the demurrer, which reads: "There is a misjoinder of parties defendant." This ground is too general and the court erred in sustaining the demurrer on this ground. Findlay v. Hardwick, 230 Ala. 197, 160 So. 336; Inland Waterways Corporation v. Sloss Sheffield Steel & Iron Co., 223 Ala. 397, 136 So. 849; Bright v. Wynn, 210 Ala. 194, 97 So. 689.

■ Moreover, the demurrer was joint and the count being good as to the City, the demurrer should have been overruled even though the Tax Assessor was improperly joined, where the Tax Assessor did not demur separately. Louisville & Nashville Railroad Co. v. Lynne, 199 Ala. 631, 75 So. 14; 41 Am.Jur., Pleading, § 230, p. 454; 71 C.J.S. Pleading § 260, p. 509; Jones Alabama Practice & Forms, Vol. 3, §§ 9780, 9785. The demurrer to Count 4 should have been overruled.

■ Counts 1 and 2 allege that there was no tax levy made by the City for the tax year 1950–51, nor any levy for the preceding year. It is elementary that there can be no tax due until there is a levy. State v. Board of Revenue & Road Commissioners of Mobile County, 73 Ala. 65; 51 Am.Jur., Taxation, § 647. The demurrer to each of these counts should have been overruled.

Counts 3, 5 and 6 show on their face that they are based on the case of City of Montgomery v. Graham, 255 Ala. 685, 53 So.2d 363, which case is referred to in each of the counts. Inasmuch as we feel that the holding in that case must be modified to the extent that it would not support Counts 3, 5 and 6, we hold that the demurrer to each of those counts was properly sustained.

■ The first clause of Sec. 216 of the Constitution of Alabama of 1901 reads:

"No city, town, village, or other municipal corporation, other than as pro-

vided in this article, shall levy or collect a higher rate of taxation in any one year on the property situated therein than one-half of one per centum of the value of such property as assessed for state taxation during the preceding year; * * *."

This clause is followed by several provisos; the pertinent part of the one relating to Montgomery reading " * * * and, provided further, that this section shall not apply to the city of Montgomery, which city shall have the right to levy and collect a tax of not exceeding one-half of one per centum per annum upon the value of the taxable property therein, as fixed for state taxation, for general purposes, * * *." A comparison of the two provisions reveals that cities under the first clause must base their levies upon the value "as assessed for state taxation during the preceding year," while the proviso relating to Montgomery is silent as to what year, requiring only that the tax be on the value "as fixed for state taxation." This means that the City of Montgomery had a latitude for selecting the basis of taxation not enjoyed by the municipalities operating under the first clause of Sec. 216. This first clause has the same meaning as the first clause of its predecessor, Article XI, Sec. 7, Constitution of Alabama of 1875. It was construed to be a *limitation* upon the exercise of the inherent power of the Legislature to tax, rather than a *grant* of the power to tax in Hare v. Kennerly, 83 Ala. 608, 3 So. 683, 685, where the court said:

" * * * We repeat, that these several clauses are not grants of the power to levy taxes, but limitations upon that taxing power which has always been inherent in the state, and vested in the legislative branch of the State government, which is the depositary of all authority on the subject. * * *"

Later, the Legislature provided for an "Optional Method Of Collecting Municipal Taxes," now codified in Tit. 37 as Article 2, §§ 698–732. It permits "any municipality" to use the state and county tax machinery for the collection of municipal taxes, provides for compensation of the tax assessor and collector, and provides a public service to the taxpayers of municipalities by permitting them to pay their full state, county and municipal property tax at one place at one time. Tit. 37, § 700, provides for the levying of taxes for municipalities adopting this optional method and also provides that the levy shall be continued for any year in which the city governing body shall fail to make a levy. It directs the municipality, during May of each year, to levy the tax for the next succeeding year on the value of the property as assessed for state taxation for the tax year ending September 30th, next succeeding the levy. We can find no conflict in this provision in § 700 with the constitutional provision in Sec. 216 relating to Montgomery.

It, therefore, follows that there is no constitutional prohibition in Sec. 216 to keep Montgomery from adopting the optional method of collecting municipal taxes (Tit. 37, §§ 698–732) anything in City of Montgomery v. Graham, 255 Ala. 685, 53 So.2d 363, to the contrary notwithstanding. The statements in that case that the City of Montgomery cannot levy its taxes pursuant to § 700, Tit. 37, Code 1940, and cannot levy taxes for the next succeeding year upon the state valuation for the then current year, are not to be followed since they were not necessary to a decision in that case.

It is argued that the proviso in Sec. 216 of the Constitution relating to Montgomery is mandatory and that Montgomery must levy city taxes based on a valuation for the current year and cannot levy taxes on a valuation for the preceding year. The Graham case does so indicate, but as already noted, these statements are not to be followed. We have previously shown that the provision in Sec. 216 does not prohibit Montgomery from using the valuation for the preceding year as a basis for the levy, but allows Montgomery a latitude in the choice of years of a basis for taxation.

We cannot agree that Sec. 216 was intended to prohibit Montgomery from using any certain basis when it is entirely silent on the subject of what basis is to be used; and we do not think the Legislature intended to bar or prohibit Montgomery or any municipality so situated from using the optional method of collecting municipal taxes, Tit. 37, §§ 698–732. Such a holding would be chaotic to a settled, practically uniform and accepted plan for the assessment, collection and handling of municipal ad valorem taxation in Alabama.

The proceedings of the Constitutional Convention of 1901 show that of the seven members of the Convention from Montgomery County, only Mr. Sanford was in favor of the Amendments referred to in the minority opinion, and the Convention voted to table each of the Amendments offered by Mr. Sanford, thereby presumably rejecting his arguments and interpretations, Vol. 4, Official Proceedings, Constitutional Convention of 1901, pp. 4816, 4821, 4824, 4828, 4830.

The judgment of the Court of Appeals is affirmed in part, reversed in part and remanded.

LAWSON, SIMPSON, STAKELY· and MERRILL, JJ., concur.

LIVINGSTON, C. J., and COLEMAN, J., dissent in part.

COLEMAN, Justice (dissenting).

With the majority holding that the demurrer to Counts 1, 2, and 4 should be overruled I agree.

The majority sustain the demurrer as to Counts 3, 5, and 6, and hold that the City of Montgomery may levy taxes under § 700, Title 37, Code 1940. For reasons hereinafter set out, I do not agree that the City is authorized by § 216, Constitution 1901, to levy pursuant to § 700, Title 37.

### Counts 3 and 6.

Counts 3 and 6 both allege that the levy "was invalid because it was made on May 19, 1950, for the tax year October 1, 1950—September 30, 1951." The basis for recovery in these two counts is that the levy was prematurely made under § 670, Title 37, as amended by the Act approved July 7, 1945, Acts of 1945, page 719. As so amended, a city, under that Act, is required to levy "After the first day of October of each year," or "prior to the first day of August of each year."

The counts allege that the levy was made May 1, 1950, for the tax year which commenced on the following October 1, 1950. The allegation is that the levy was made before the tax year commenced and not during the year as required by statute. Without undertaking to set out reasons at length, I am of opinion that the provisions as to time of making the levy are directory not mandatory; State Auditor v. Jackson County, 65 Ala. 142; Perry County v. Selma, M. & M. Railroad Co., 58 Ala. 546; Iberia Parish v. Iberia Parish Police Jury, 123 La. 416, 49 So. 5; and that the levy alleged in Counts 3 and 6 was not invalid because prematurely made. Therefore, for a different reason, it seems to me demurrer should be sustained to Counts 3 and 6.

### Count 5.

After holding that § 216, Constitution 1901, does not prevent the City of Montgomery from levying a tax based on the assessed value for the preceding year under § 700, Title 37, Code 1940, the majority appear to hold that Count 5 was subject to demurrer because it fails to show an illegal collection of taxes. If the majority be correct as to § 216, then it seems to me they are in error in holding Count 5 subject to demurrer.

Count 5 recites in pertinent part:

"5. The Plaintiff claims of the Defendants * * * $191.25 * * * for money paid as taxes * * * on October 16, 1951 * * * Plain-

tiff avers that * * * Plaintiff was presented a * * * statement * * * showing the amount of $870.00 allegedly due * * * by the Plaintiff to the City of Montgomery for taxes for the tax year ending September 30, 1951; that the Plaintiff paid said * * * $870.00 * * * on October 16, 1951; that said amount of $870.00 was computed * * * upon a valuation of $69,600.00 at a rate of $1.25 per hundred; * * * ; that the valuation of $69,600.00 was in fact the value * * * for the * * * tax year ending September 30, 1951, whereas the value * * * for the * * * tax year ending September 30, 1950, was $54,300.00; that the only levy * * * for the tax year ending September 30, 1951 was made by Ordinance 28–50, promulgated May 19, 1950; that this levy * * * provided that the tax was levied * * * on 'the value * * * for the * * * tax year ending the thirtieth day of September, 1950'; * * * that as correctly computed from the valuation provided in the levy * * * the Plaintiff owed taxes for the tax year ending September 30, 1951, in the amount of one and one quarter per centum of $54,300.00, or $678.75; that the excess amount of $191.25 included in the amount of $870.00 paid by the Plaintiff * * * was not due and was an illegal exaction; * * * and that the said payment of the excessive amount of $191.25 was made under mistake of law or fact upon an illegal tax assessment made under color of law, and was an erroneous payment which the Plaintiff is justly and equitably entitled to have refunded."

The basis of plaintiff's right to recover under Count 5 is the failure to assess and calculate the tax in compliance with the levy. Count 5 alleges that the levy was on $54,300, while assessment and collection were made on $69,600, which is an amount different from and greater than the amount authorized by the levy. An assessment and collection of a tax greater than the tax authorized by the levy would seem to me to be an illegal exaction and void, at least as to the amount in excess of the amount authorized by the levy, if not altogether void. Count 5 claims merely the excess.

There is a reference in Count 5 to the Graham case, supra, which the majority possibly take to be the basis for recovery sought in that count. The facts alleged, however, place the right of recovery on a different basis, to wit, an assessment not made according to the levy. The sufficiency of a count should rest on the facts alleged and not on the conclusion of the pleader.

Under the holding in the Graham case, the levy in Count 5 would be incorrect, but the assessment and collection would be on the current year's value and in accord with § 216, Constitution 1901. The exaction of the tax would be precisely in accord with the Constitution and the tax collection would not be in contravention of the Constitution. A count alleging such facts would not show a right to recover. Therefore, although the Graham case is correct as I understand it, I would, for the reason stated sustain the demurrer to Count 5.

### Section 216, Constitution 1901.

The majority appear to conceive that assessed value for the current year will always be greater than assessed value for the preceding year. In an era of rising prices that will ordinarily be true of some, perhaps most property values. In an era of falling prices the reverse situation will prevail, and, as to real estate, at any time, the destruction of a valuable improvement may reduce the current assessment to a mere fraction of that of the previous year. As to personal property subject to depreciation, the correct assessed value will diminish each year as the personalty wears out. The construction of a constitution ought to rest on a basis more constant than the fluctuating tide of the economic cycle.

This court, in City of Montgomery v. Graham, supra [255 Ala. 685, 53 So.2d 365], said:

"The Constitutional debates of 1901 relative to Section 216 of the Constitution lead us to conclude that it was the intention of the framers of that instrument that the City of Montgomery should assess and collect its taxes upon the basis of the valuation as fixed for state taxation for current tax year, instead of the valuation as fixed for state and county taxation for the 'preceding year,' as was required of other municipalities. Vol. 4, Official Proceedings of Constitutional Convention of 1901, pp. 4816, 4828.

\* \* \* \* \* \*

"There can be little doubt that the City of Montgomery, with reference to the levy of its taxes, is still governed by Section 216 of the Constitution and that it must levy its taxes, based upon the valuation as fixed for state taxation for the current year. Its levy must be based upon the state valuation for the current year and cannot, as noted in the Johnson case, supra, levy for the next succeeding year upon the state valuation for the then current tax year. The City of Montgomery in view of Section 216 cannot levy its taxes pursuant to § 700, Title 37, Code 1940, but must look to § 670 of Title 37, Code 1940." 255 Ala. 685, 686, 687, 53 So.2d 363.

The majority now hold the quoted statements to be in error.

Section 7, Article XI, Constitution of 1875, provided in pertinent part:

"No \* \* \* municipal corporation other than provided for in this article, shall levy \* \* \* a larger rate of taxation, in any one year, on the property thereof, than one-half of one per centum of the value of such property, *as assessed for state taxation during the preceding year*; \* \* \*." (Em-phasis Supplied.) Constitution of 1875, Art. XI, § 7, 1923 Code, Vol. I, pp. 378 and 379.

The quoted provision of the 1875 Constitution was construed by this court in Elyton Land Co. v. Mayor and Aldermen of Birmingham, 89 Ala. 477, 7 So. 901, 902. The court there said:

"In the absence of constitutional restrictions, the general assembly could confer on municipal corporations the power of taxation for municipal purposes, as to rate, assessment and subjects which it possesses for State purposes. The inhibition against the power of municipal corporations to levy a greater rate of taxation than prescribed in the constitution operates a limitation on the power of the legislature to delegate authority for that purpose. In interpreting limitations upon legislative power in state constitutions, the nature and objects of the particular limitations should be kept in view, and the causes in which they originated considered in the light of history and former constitutions, and such force and operation given to the language employed consistent with its legitimate meaning as may fairly remedy existing and apprehended evils, and accomplish the desired ends. The framers of the constitution were cognizant that no governmental power is more liable to abuse than the taxing power, and also of its oppressive use and perversion by municipal authorities without regard to the interests of the citizen. They sought to prevent this abuse by restricting the exercise of the power within moderate and protective limits. It is contended that the constitutional inhibition is against a higher rate of taxation, and was not intended to restrict the power of the municipality to assess taxes on property only which has been assesssed for state taxation. This construction ignores the relation which the rate sustains to the valuation, and their insep-

arable connection. As all taxes levied on property in this state, are required to be assessed in exact proportion to its value, an assessment or appraisement is an essential preliminary to the apportionment. Without an assessment made in the mode required by law, and by the proper officers, the tax is without support. This is the principle underlying the limitation upon the taxing power of municipal corporations. Experience having shown the insufficiency of a limitation upon the mere rate, which could be easily avoided by increasing the value, preserving at the same time the nominal rate, and that a mandate to the general assembly 'to restrict their power of taxation, assessment and contracting of debt' did not promote the ends proposed, it became apparent that the interests and protection of the citizen called for a restraint better guarded and more imperatively protective. The plan devised was to limit the rate to a specified per cent. of the value as assessed for State taxation.

"The controlling principle is the adoption for cities, towns, and other municipal corporations of the assessment of value made by the officers of the state, as the basis of the *per cent.* to be levied, and the measure of the tax-payer's liability, thereby preventing different assessments, varying as to values, for the state and for the political subdivisions, mere agencies for the administration of local government, and furnishing a rule by which whether the limited *per cent.* had been exceeded could be ascertained by a mere arithmetical calculation. As we have said, a constitution, the revision of a former constitution, should be interpreted in the light of its predecessor. The corresponding provision in the constitution of 1868 is found in section 36 of article IV, which declared: 'The general assembly shall not have power to authorize any municipal corporation

* * * to levy a tax on real and personal property to a greater extent than two *per centum* of the assessed value of such property.' The revisers, not being satisfied with the provision, the supposed defect in which consisted in the unrestrained power of the legislature to provide for assessments by municipal officers, materially altered it. Not only was the *per cent.* largely reduced, but also in lieu of the words, '*the assessed value of such property,*' the phrase, '*the value of such property as assessed for state taxation during the preceding year,*' was inserted. When the clause thus altered is considered in connection with the omission from the present constitution of the mandate of the general assembly as to the restriction of the power of assessment, the purpose to provide the state assessment as the basis of the percentage, and to prohibit special assessments for municipal taxation, confining municipalities to the exercise of the legislative function of levying taxes, becomes apparent. The effect is to prescribe for municipal corporations the same rule which governs the levy of county taxes, except that the latter are assessed on the State assessment for the current tax year, and the former on the assessment for the preceding year. Perry County v. Selma, M. & M. Railroad Company, 58 Ala. 546. The reason for this difference may have been that, municipal taxes being generally levied before the completion of the state assessment for the current year, the assessment for the preceding year furnished the only certain and ascertained *data* for adjusting the levy. But, whatever be the reason, the expression 'one-half of one *per centum* of the value of such property as assessed for state taxation during the preceding year' excludes the inference that the *per centum* may be of the value as assessed for municipal taxes by municipal officers, or as assessed by any other mode of assessment.

*Expressio unius est exclusio alterius.* A constitutional inhibition that no city, town or other municipal corporation shall levy a larger rate of taxation on property than a specified per cent. of a *designated* value, is the prohibition of a levy upon a different value. Under the constitution, a city has no authority to levy a tax upon the value of property during the current tax year." 89 Ala. 477, 479, 480, 481, 7 So. 901.

When the same reasoning is applied to the Montgomery proviso, and that proviso is regarded as a limitation on the power of the legislature, which the majority concede it to be, the same conclusion cannot be escaped. The expression in the proviso, "as fixed for state taxation," which all agree means assessed value for the current year, "excludes the inference, that the per centum may be of the value as assessed for municipal taxes by municipal officers, or as assessed by any other mode of assessment." A constitutional inhibition, that a designated city, Montgomery, shall have the right to levy "a tax of not exceeding" a specified per cent of a designated value, "is the prohibition of a levy upon a different value." Under the Constitution, the City of Montgomery has no authority to levy a tax upon the value of property during the preceding year.

The opinion last quoted from must have been known to the Convention of 1901. When § 216, Constitution 1901, was before the Convention, Mr. Sanford (Montgomery) offered an amendment to strike out the Montgomery proviso which now appears in § 216, and to insert in lieu thereof the following:

" ' "The city of Montgomery shall not levy or collect a larger rate of taxation in any one year on the property thereof than one-half of 1 per centum of the value of such property as assessed for State taxation *during the preceding year;* provided, that for the payment of debts existing at the time of the ratification of the Constitution

of 1875, and the interest thereon, an additional rate of 1 per centum may be collected, to be applied exclusively to any such indebtedness." ' " (Emphasis Supplied.) Official Proceedings of the Constitutional Convention of 1901, Vol. 4, page 4816.

In the course of his argument for the amendment, Mr. Sanford said:

"What is more, the section in the Committee's report does what? The Constitution of 1875, which I have transcribed in the amendment, limits the taxation to one hundred cents on the hundred dollars for debts prior to the ratification of the Constitution of 1875. This section does not limit it at all. When that was done in 1875, Montgomery owed a bonded debt of $547,600, for which provision was made to pay the principal and the interest. It owes today about $1,991,620—nearly three times as much. The old law said that when you assessed the property of these people it should be according to the rate of taxation assessed by the State the preceding year. This does not say 'preceding year,' but it means the current year, and we know that the assessments vary from year to year, according to whether property becomes more valuable or depreciates in value. Why should you, in the very provision which refers to debts prior to 1875, make all the indebtedness of Montgomery due from the inception of the city until today that have not been paid? Why do you make that discrimination in regard to Montgomery? Why do you say the rate of taxation should be that which was assessed for the State, and everywhere else you say 'for the preceding year?' Why do you make that distinction against Montgomery?" Official Proceedings of the Constitutional Convention of 1901, Vol. 4, page 4818.

The Convention rejected the above quoted amendment. Mr. Sanford later offered another proposal to amend § 216,

by inserting the words: "for the preceding year," and in support of this later amendment said:

" * * * Let me say to you that I wish this word 'preceding' inserted also in the amendment so that they shall be taxed like other cities. * * *" Official Proceedings of the Constitutional Convention of 1901, Vol. 4, page 4829.

The later amendment was also rejected by the Convention.

By rejecting the proposed amendments and adopting § 216 as it now appears, the Convention clearly showed an intention that the City of Montgomery should levy its taxes on the assessment for the current year, like the county and the state, and not on the assessment for the preceding year as other cities must do.

City of Montgomery v. Graham, supra, so decided, and I am not able to concur in the contrary holding of the majority in the instant case.

LIVINGSTON, C. J., concurs in the foregoing dissent.

