[Birmingham Building & Loan Association v. The State.]

# Birmingham Building & Loan Association v. The State.

*Proceeding to Increase Tax Assessment.*

1. *Taxation; proceeding before board of equalization.*—While the act to amend the revenue laws, which creates a board of equalization of taxes in each county (Acts of 1894-95, p. 1205, § 31), provides that the board of equalization in each county shall convene on the first Monday in May, examine and carefully compare each assessment list with the book of assessments, inquire as to whether they are properly made, and if there be an erroneous assessment, that the same shall be entered on a docket kept for that purpose, and a notice served upon the tax payer affected thereby, requiring him to appear before the board on the first Monday in June following, when the case shall be heard and determined, such provisions are directory merely, and call for the exercise of purely ministerial duties on the part of the board of equalization; and, therefore, it is not essential to the lawful exercise of the jurisdiction which said act confers upon the board of equalization, that the preliminary action to the correction of the error in the assessment, and the issuance of the citation to the tax payer should have been had at the May sitting of the board of equalization in strict conformity with the statute. If the tax payer receives the statutory notice to appear and contest during the time fixed by the statute for that purpose and all things were done which the statute required, except that the prescribed time of performing the preliminary requirements was not observed, the board acquires jurisdiction, and its proceedings are valid.

2. *Same; same; judgment on appeal.*—On an appeal from a judgment rendered by a board of equalization of taxes, as prescribed by the statute, in which the valuation of property was increased from its original assessment (Acts of 1894-95, p. 1205, § 33), the trial in the circuit or city court must be *de novo*, the issue presented being that the assessment returned by the tax assessor was increased in certain specific particulars; and, therefore, on an appeal upon a defendant's declining to plead further, after adverse rulings upon his pleadings, it is error for the court to render judgment against the defendant for the amount based upon the increased valuation put by the board of equalization,

from which the appeal was taken, without the introduction of legal evidence to show the incorrectness of the tax assessor's assessment, and what should have been the proper assessment and valuation.

APPEAL from the Circuit Court of Jefferson.

Heard before the Hon. JAMES J. BANKS.

The Birmingham Building & Loan Association gave in its property for taxes to the tax assessor of Jefferson county for the year 1896, within the time prescribed by law. On July 2, 1896, a citation was issued by the Board of Tax Equalization of Jefferson county, Alabama, notifying the Birmingham Building & Loan Association that said Board of Tax Equalization, in regular session, on July 2, raised the tax assessment on its property, theretofore made by it to the tax assessor of said county, and that the cause was set down for hearing at the next regular session of said board on July 10, 1896. This citation was served upon the association; and, by its attorney, it appeared before the board the day it was cited to appear, and made a motion to dismiss the cause. The grounds of this motion and the other proceedings which were had in the case are sufficiently stated in the opinion.

SMYER & SMYER, for appellant.—The board of equalization was a court of limited jurisdiction, and the record must show affirmatively that the court acquired jurisdiction by strictly following the preliminary steps required by the statute.—*Molett v. Keenan,* 22 Ala. 487; *Commissioners v. Thompson,* 15 Ala. 134; *Lamar v. Commissioners,* 21 Ala. 772; *McAllilley v. Horton,* 75 Ala. 491.

WILLIAM C. FITTS, Attorney-General, for the State.

DOWDELL, J.—By section 5 of the "Act to amend the revenue laws of Alabama," approved February 18, 1895, (Acts, 1894-95, p. 1192) a county board of equalization of taxes, in each county, is created in the manner therein specified.

Section 31 of said act provides that said board will convene at the court house of the county on the first Monday in May and shall rigidly examine each assessment

[Birmingham Building & Loan Association v. The State.]

list, and compare all such lists carefully with the book of assessment and institute inquiry as to the correctness of any assessment of real or personal property, or subject of taxation; and if upon such inquiry any assessment, whether made by the tax-payer, his agent, or by the assessor, is supposed not to be full and complete, or the property assessed at less or more than its actual value, or that property has been omitted that should have been assessed, the said board of equalization shall enter the same on a docket to be kept for that purpose by said board in the name of the State of Alabama as plaintiff and the tax-payer as defendant, and shall issue a notice and copy thereof, addressed to the tax-payer, stating the substance of the supposed error, improper assessment, under-valuation or over-valuation, and citing such taxpayer to appear before said board of equalization on the first Monday in June, to show cause why such error, omission, under-valuation should not be corrected, and in what respect. "A copy of said notice shall be personally served on the said taxpayer, or if he cannot be found, by leaving the same at his residence, by the tax assessor or any person whom he may deputize in writing for that purpose, and the date when and how same was so served shall be endorsed on the original, which original shall be returned to the secretary or any member of said board; *provided*, that if the taxpayer is a non-resident of the county and his residence is known, then the secretary of said board shall mail a copy of said notice, postage paid, to said taxpayer, endorsing on the original when the copy was mailed and to what address; *provided*, that in counties paying less than twelve thousand dollars property tax, the said board of equalization at this meeting of the board shall not sit for a longer term than four days in each year. In counties paying more than twelve thousand dollars and less than twenty thousand dollars property tax, said board shall not sit for a longer term than six days in each year; and in counties paying twenty thousand dollars property tax and over, shall not sit for a longer term than ten days."

Section 32 provides as follows: "That the said county board of equalization shall convene a second time at the court house on the first Monday in June, and may remain in session for such length of time as may be neces-

sary to dispose of the cases before it, and for the hearing of such cases as may have been docketed ; and the cases shall be called in such order for hearing and disposition as the said board or a majority thereof may see proper. For the purposes of such inquiry or hearing, the said board· may subpœna such witnesses, and introduce such oral, documentary, or record evidence as may be necessary to a full understanding of the question, including the abstract duly certified, provided by section 28 of this act, made by the probate judge of any county in the State of Alabama, and the taxpayer may upon application, at any time before the day on which his case is set for hearing, have subpœnas issued for witnesses in his behalf, and may also introduce documentary or record evidence pertaining to the matter under investigation, and the said board of equalization shall have authority to set cases for hearing on such days as it may see proper, and give notice to the defendant and subpœna witnesses for certain days, and may for good cause shown, continue a hearing over to a day to be fixed by said board, but neither the State nor the county shall be required to pay the *per diem* of a defendant's witness, and the county shall only pay the *per diem* of two witnesses in any one case, and the mileage shall not exceed four cents per mile each way and one dollar *per diem* for each witness to be paid by the county treasurer on the order of the chairman of the board. The tax collector shall be present in court at such hearing to represent the interest of the State.''

By section 33 it is provided, that if the taxpayer appears in person or by attorney, or has had five days notice, the said board shall proceed to hear the matter, and shall raise or reduce the valuation, or enter the omission, or correct the error, or add such items of taxation, and fix the value thereof, as may have escaped assessment, and to fix all values at what the evidence shows to have been the actual cash value of the property on the first day of October preceding. It prescribes certain evidences which the board may consider in hearing the case, and provides that if the matter be contested, the board shall upon the close of the hearing render its decision within twenty-four hours, unless the taxpayer

[Birmingham Building & Loan Association v. The State.]

consents to a longer time, which decision must be entered upon the docket and signed by the chairman of the board. From the judgment and decision of the board, any member of the board or the defendant may appeal in ten days to the next term of the circuit or city court, when the same shall be tried anew.

In the present case, the board did not, at its May term, take action in the matter of equalizing the appellant's taxes as returned by the assessor, but, so far as appellant's motion to dismiss or pleas show to the contrary, it did, during its regular sitting beginning on the first Monday in June, to-wit, on the second day of July, take such action, and did enter upon the docket the supposed value of appellant's taxable property, and issue and have served upon it a citation to appear and contest, on the 10th day of July. The appellant appeared before the board on that day (the citation having been served on the third) and moved the board to dismiss the proceeding on the ground that its said action in reference to the valuation of its property, and issuing the citation, was not had at the May term, and not until July 2d, aforesaid. The motion being overruled by the board, appellant interposed the same matter by way of pleas. These pleas being disallowed, the board affirmed its previous action raising the taxable values, and appellant appealed to the circuit court. The same motions and pleas were filed in the circuit court and there also disallowed; the motion to dismiss being overruled, and demurrers to the pleas being sustained. Appellant declining to plead over, the court rendered judgment affirming the decision of the board, and that appellant pay State and county taxes for the year 1896, on sixty-nine thousand two hundred and fifty dollars, that being the sum to which the taxable values had been raised by the board, and rendered judgment for costs against appellant and its sureties. From this judgment the present appeal is taken, and the principal question presented for our decision is whether or not it was essential to the lawful exercise of the jurisdiction which the act confers upon the board, that the preliminary, *ex parte* action in reference to raising the assessment, and issuing the citation should have been had at the May term, in strict conformity to the statute.

The board is a judicial tribunal created by the statute, of special, limited jurisdiction, and its judicial action must be supported by substantial compliance with all those requirements which the statute, in all its parts, fairly interpreted, provides as essential to the exercise of its jurisdiction; which compliance must affirmatively appear. It is not questioned, in this case, that all things were done which the statute requires, except that the prescribed *time* of performing the preliminary requirements, to which we have referred, was not observed.

Upon reading the provisions of the act, hereinabove set forth, it is seen that the judicial functions of the board are those which are prescribed by sections 32 and 33 of the act. It will be observed that the acts required by section 31 to be performed are ministerial only. The incorrectness of an assessment which the board is by that section required to enter upon a docket and give the tax-payer notice of, by citation, is not one which the board has, by judicial processes, actually *found* to exist, but it is merely a supposed error, improper assessment or under or over valuation, suggested to the board by such inquiry as it may choose to make, or information it may choose to act upon. The entry to be made upon the docket of the supposed valuation is a sort of pleading, so to speak,—having no element of a judicial determination. So that, we take it to be clear that these functions are purely ministerial; and their obvious design is to provide a practical and orderly system of bringing before the board, in its judicial capacity, for its judicial action, all such complaints in matters of assessments as might need judicial supervision. Therefore, we find, the board sits as a court, and exercises its jurisdiction as such, only when, in its June sitting, performing those duties required by sections 32 and 33 of the act to be then performed.

It is a general rule, founded in most obvious reason, that where the statute fixes a time or place for a court to sit and exercise its jurisdiction, it can lawfully do so at no other time or place.—*Garlick v. Dunn*, 42 Ala. 404; *Davis v. State*, 46 Ala. 80. But the rule as to time is not universally true in respect of the performance of ministerial acts required to be performed by officers. The

general rule as to such acts is to the contrary.   We take a correct statement of it from the brief of Judge R. W. Walker, as counsel, in the case of *Commissioners' Court v. Rather*, 48 Ala. on p. 440, as follows:   "A statute specifying a time within which a public officer is to perform an official act affecting the rights of others, is directory merely, as to the time within which the act is to be done, unless from the nature of the act or the phraseology of the statute, the designation of the time must be considered a limitation on the power of the officer. 22 Ala. 126;  6 Wend. 486–7–8;  3 Mass. 230–2; 5 Cowen, 269;  10 Ala. 107–8; 26 Ala. 619; Dwarris, 222–3; 18 N. Y. 200.

"By this it is not meant that a duty does not rest upon the officer to act within the time, a duty which he may be compelled to perform, but simply that his power to act does not expire with the time.—*Stickney v. Huggins*, 10 Ala. 106, 108;  *Webster v. French*, 12 Ill. 302.

"When a statute directs an officer to do a thing in a certain time, without any negative words restraining him from doing it afterwards, the naming of the time will not be construed as a limitation of his authority. Dwarris, p. 223;  *Ex parte Heath*, 3 Hill, 42; *People v. Holley*, 12 Wend. 486;  *Mead v. Gale*, 2 Den. 232; *Barnes v. Badger*, 41 Barb. 98–9;  *People v. Cook*, 14 Barb. 290; s. c., 8 N. Y. 67;  *Miller v. Finkle*, 1 Parker's Cr. R. 374;  29 Md. R. 516."

The authorities there cited from our own court are clear in support of the principles stated.   In the case of *Stickney v. Huggins*, 10 Ala. 106, there was a statute which provided that, "If any person authorized by law to collect the taxes in any of the counties of this State shall fail to collect and pay the same to the county treasurer within the time prescribed by law, the judge of the county court, if of his own knowledge, or on complaint of the treasurer, shall hold a special court within *twenty days thereafter* to try such delinquent collector; and if it appears that he has so failed to collect, or pay over such taxes said court shall enter judgment in favor of the treasurer," etc.   (Italics ours).   Construing this statute, Chief Justice COLLIER, for the court, said:   "Although this section addresses itself in mandatory terms to the judges of the county courts, yet it cannot

be understood that in requiring him to act within twenty days from the time the default is developed, his right to act is limited to that period. Time was not prescribed for the benefit of the collector, but rather to quicken the diligence of the judge, so that justice might be promptly administered and the greater certainty of collections insured. According to all analogies, in directing the proceedings to be instituted within a definite time, the act must be considered as directory merely. It is the duty of the judge to yield a ready obedience to its directions, but if he fails to do this his authority to act under it is not gone."

For a full statement of similar import to the foregoing, see Endlich on Intr. of Statutes, § 436.

Now, the design of the statutory provisions we are construing in this case is plain. It was to secure an equalization of taxes. Methods were provided to render the system practical and easy. The essence of the proceeding was that the board should have before it a docket of the matters to be investigated, showing the the supposed errors which might require correction ; that it should sit, at the time specified, and judicially hear and determine those matters, and enter its decisions upon the docket. The preliminary requirements which ought to have been performed at the May term, were merely to get the matters for investigation upon the docket ; to get the cases in court, so to speak, and to bring the tax-payer into court to represent his interests. It was not essentially material to the tax-payer when the docket of cases was made up, so that he received the statutory five days notice that he would be required to appear and contest during the time fixed by the statute for that purpose. The citation was only for the purpose of bringing the tax-payer before the board ; to give it jurisdiction of his person, and, under all the authorities, it may be waived. It does not pertain to jurisdiction of the subject-matter. Appearance, without the issuance of a citation at all, would authorize the board to proceed against him.

Our conclusion is that the proceeding was not without the jurisdiction of the board, either of the subject-matter or person, and that the circuit court was right in re-

fusing to dismiss it and in sustaining the demurrers to the pleas.

It is objected that the circuit court ought to have instituted a trial *de novo* and ascertained the value of the appellant's taxable property, instead of rendering the judgment it did, upon appellant's declining to plead over after the demurrers to its plea were sustained.

We think this objection is well taken. So far as the record shows upon the appellant's declining to plead over after demurrer sustained to the pleas, the circuit court thereupon without further trial and without any evidence, rendered judgment against the defendant for an amount based upon the raised valuation put by the board of equalization, and from which the defendant had appealed to the circuit court. On this appeal the statute provides that the case shall be tried anew. The judgment rendered by the board could not be looked to by the circuit court for any purpose. This court said in the case of *Sullivan v. State*, 110 Ala. 95: "The real issue on the trial on appeal being, not that the assessment made by the board was a fair, just and legal assessment, but that the assessment made by the tax assessor was incorrect in certain specified particulars." It was upon the State by competent and legal evidence to show the incorrectness of the tax assessor's assessment, and what should have been a proper assessment and valuation, and until this was done the circuit court could not render judgment against the defendant.

The judgment of the circuit court must be reversed and cause remanded.

The foregoing opinion in the main was prepared by HEAD, J.