MURDOCK, Justice.
Michael A. Howard appeals the summary judgment entered against him by the Cullman Circuit Court in' the action he commenced on behalf of himself and all other similarly situated taxpayers in Cull-man County against Cullman County and its Revenue Commissioner Barry Willing-ham, in his official capacity (“the revenue commissioner”), seeking a refund of property taxes he and other taxpayers paid to 2013. We affirm the summary judgment.

I. Facts

The revenue commissioner for each county is responsible for the assessment of property for the purpose .of taxing the property, collecting those taxes, and,making reports concerning the same. County property taxes are due on October 1 of each year, and must be paid by December 31 to avoid incurring a late fee.
Before its amendment during the course of this action, § 40-7-42, Ala.Code 1975 (hereinafter “former § 40-7-42”), provided:
“The county commission, at the first regular meeting in February in each year, shall levy the amount of general ■taxes required for the expenses of the county for the current year, not to exceed one half of one percent of the value t>f the taxable property as assessed for revenue for the state as shown by the book of assessments after it shall have been corrected, at the same time levying the amount of special taxes required for the county for the current year, which *480 levy shall be made upon the same basis of valuation provided above and, when such levy shall be made, shall certify the rate or rates of taxation and the purpose or purposes for which the tax is levied to the tax assessor of the county.”
(Emphasis added.)
On February 14, 2013, the Cullman County Commission, (“the Commission”) held its first regular meeting of the month. It is undisputed that the Commission did not levy any property taxes during that meeting. Instead, the Commission levied property taxes at a meeting held in May 2013; the levy was set at the same level as the prior year. There is also no dispute that the Commission was aware of the requirements of former § 40-7-42.[1] Based on the. May 2013 levy, the revenue commissioner assessed general and special property taxes against owners of property in the county, issued tax notices, and collected property taxes for the 2013 tax year. The county administrator for the Commission testified by affidavit that, “[without the levy of ad valorem taxes, Cullman County could not pay for either the necessary general expenditures of the County, including its various contracts, or [its] bond debts.”
Howard owns real property in Cullman County. He was assessed general and special property taxes for the period October 1, 2012, to September 30, 2013. He timely paid those taxes without filing any protest.
On December 27, 2013, Howard commenced this action against Cullman County and the revenue commissioner (hereinafter sometimes referred to collectively as “the defendants”) on behalf of himself and a putative class of taxpayers in Cullman County. Howard sought a judgment declaring that, pursuant to former § 40-7-42, the Commission’s levy of property taxes for October 1, 2012, through September 30, 2013, was invalid because it was done in May 2013 rather than at the Commission’s first regular meeting in February 2013. He also sought the return of property taxes collected in 2013. Howard filed a first amended complaint on February 4, 2014.
Because of the present action and similar actions that had been filed against other county commissions,[2] the Alabama Legislature amended ' § 40-7-42, effective April 10, 2014, by enacting Act No. 2014-433, Ala. Acts 2014. The amended version of § 40-7-42 provides:
“(a) The county commission, at the first regular meeting in February 2015, shall levy the amount of general taxes required for the expenses of the county, not to exceed one half of one percent of the value of the taxable property as assessed for revenue for the state as shown by the book of assessments after *481 it shall have been corrected, at the same time levying the amount of special taxes required for the county, which levy shall be made upon the same basis of valuation provided above and, when the levy shall be made, shall certify the rate or rates of taxation and the purpose or purposes for which the tax is levied to the tax assessor of the county. The levies established as provided herein shall be assessed and collected in all subsequent tax years unless altered by the county commission in compliance with a change in the tax rate by general law not later than the last day of February prior to the effective date of the. change in tax rate.
“(b) Any general or special taxes levied by the county commission prior to April 10, 2014, are hereby ratified and confirmed irrespective of whether the general or special taxes were levied during the first county commission meeting held in February of any year.”
Thus, the amended version of § 40-7-42 purported to retroactively validate any past levies of property taxes by county commissions that were not levied during the first regular meeting in February of a given year.
On April 24,2014, Howard filed a second amended complaint adding various claims challenging the constitutionality of Act No. 2014-433. In accordance with § 6-6-227, Ala.Code 1975, Howard served notice upon the attorney general of his constitutional challenges to Act No. 2014-433.
On May 12, 2014, the defendants filed a motion for a summary judgment. On September 8, 2014, Howard filed a motion for a summary judgment. The trial court held a hearing on the motions on October 24, 2014. On December 15, 2014, the trial court issued its order in which it granted the summary-judgment motion filed by the County and the revenue commissioner and denied the summary-judgment motion filed by Howard. In a lengthy order, the trial court concluded that “the timing provision in [former § 40-7-42]' is directory in nature,” rather than mandatory, and that
“[t]he mandatory clause — the essence of the former version of Ala.Code [1975,] § 40-7-42 — is the requirement that a county commission ‘shall levy the amount of general taxes required for the expenses of the county for the current year.’ Interpreting the adverbial clause regarding the timing of the levy to be mandatory in nature would have' the absurd result of thwarting the very purpose of the statute, which is to ensure that each county has sufficient revenue to meet its legal responsibilities. Indeed, if the Cullman County Commission had refused to do so, the caselaw suggests that a writ of mandamus would lie in favor of the County’s debtors and, arguably, its citizens, requiring • such a levy. See State v. Laurendine, 199 Ala. 312, 314-15, 74 So. 370, 371 (Ala.1917).
“To be clear: in deciding in Cullman County’s favor as to this issue, the Court is not condoning the failure of the Cull-man County Commission to levy the taxes as required by law. While not commendable, however, levying the* taxes after the statutorily directed time is not, in and of itself, sufficient to render the whole of the levy void and thus entitle Howard to a refund. ' Because this Court finds that the timing provision in the former version of Ala.Code [1975,] § 40 — 7—42[,] is directory, judgment is due to be granted in favor of Cullman County and Revenue Commissioner Willingham, in his official capacity as Revenue Commissioner of Cullman County, Alabama.”
(Footnote omitted.)
Because the trial court concluded that the Commission’s 2013 levy of property *482 taxes was not invalidated by its failure to levy the taxes in February 2013, the trial court also concluded that Howard’s claims concerning the constitutionality of Act No. 2014-433 were moot. The trial court reasoned that Howard’s constitutional challenges
“all rest on the contention that the ratification of previous irregular tax levies interferes with his right to a refund of the allegedly void taxes, which he claims vested either at the moment of taxation or, at the latest, upon the filing of this lawsuit,... Because Howard never had a right to a refund of his 2013 taxes, it is axiomatic that.such a right never vested in him, so that the ratification of the previous tax levies does not violate Section 13, 22, or 95 of the Alabama Constitution of 1901.”[3]
The trial court likewise, concluded that Howard’s argument that the retroactivity provision of Act No. 2014-433 violated his right to due process of law under the Fourteenth Amendment was mooted by its decision that the May 2013 levy was valid. Finally, the trial court noted: “Howard has generally asserted that he is immune from, retroactive tax liability; however, he has asserted no legal basis for this claim.” Accordingly, the trial court rejected Howard’s immunity argument.
. On January 14, 2015, Howard filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the judgment. The trial court denied the postjudgment motion on March 4,2015. Howard appealed.

II. Standard of Review

“‘This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986), Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts, to the nonmovant to produce “substantial evidence” as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. “[Substantial evidence is evidence of .such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).’
“Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).”
Ex parte Jackson Cnty. Bd. of Educ., 4 So.3d 1099, 1102 (Ala.2008).

III. Analysis

As noted above, the trial court concluded that the timing provision of former § 40-7-42 was directory rather than mandatory, the effect of which is that a failure by the Commission to levy property taxes at its *483 first regular meeting in February did not extinguish the Commission’s power to levy property taxes at a later time. The trial court concluded that the mandatory portion of former §. 40-7-42 was the Commission’s responsibility to levy the amount of property taxes “required for the expenses of the.county for the current year,”.
The distinction drawn' by the trial court between directory and mandatory provisions of a statute is well established, having been employed by this Court at least as early as 1844, see Anderson v. Rhea, 7 Ala. 104, 106 (1844). Our courts have continued to apply this distinction to the interpretation of statutes up to the present day. See, e.g., Cox v. Mobile Cnty, Bd. of Sch. Comm’rs, 157 So.3d 897, 902 (Ala.Civ.App.2013), reh’g denied (Dec. 6, 2013), cert. denied (July 18, 2014). As succinct a summary of the distinction as this Court has made is found in Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754, 757 (Ala.1978):
“The distinction between a mandatory provision and one which is only directory is that when , the provision of a statute is the essence of the thing to be done, it is mandatory. Under these circumstances, where the provision relates to form and manner, or where compliance is a matter of convenience, it is directory. Rodgers v. Meredith, 274 Ala. 179, 146 So.2d 308 (1962); Board of Education of Jefferson County v. State, 222 Ala. 70, 131 So. 239 (1930). In making this determination, it is legislative intent, rather than supposed words [of] art such as ‘shall,’.‘may’ or ‘must,’ which ultimately controls.”
Thus, a statutory requirement is directory if it “merely prescribes] a rule of legislative procedure that to violate would not avoid the enactment.” . Coleman v. Town of Eutaw, 157 Ala. 327, 333, 47 So. 703, 705 (1908). A requirement is mandatory if it “ ‘relate[s] to the essence of the thing to be done.’ ” Alabama Pine Co. v. Merchants’ & Farmers’ Bank of Aliceville, 215 Ala. 66, 67, 109 So. 358, 359 (1926) (quoting 25 R.C.L. 767 § 14). The Court has also noted:
“[I]t may be stated as a general proposition that a mandatory1 statute is one which prescribes, in'"addition to the requirement of performing the thing specified, the result obtained if that performance is not done; if the statute is directory only, the statute’s content is ■limited to the performance required.”
Ex parte Hood, 404 So.2d 717, 718 (Ala.1981).
A helpful discussion of the distinction between directory and mandatory provisions in the context of a tax statute is contained in State Auditor v. Jackson County, 65 Ala. 142 (1880):
“It is contended before us, that in the assessment of the railroad valuations, and in the levy of the county taxes, many irregularities intervened, which render the proceedings void. The question has been much discussed, what regulations for the levy and assessment of taxes .are mandatory, and what are simply directory. All directions given in the statutes, concerning the levy. and assessment of taxes, ought to be substantially followed by courts and officers charged with the duties. They would not be enacted, if this were not the intention of the law-making power. ‘But the negligence of officers, their mistakes of fact or of law, and many other causes, will often prevent a strict observance; and when the provisions which have been disregarded constitute parts of an important, perhaps complicated system, it becomes of the highest importance to ascertain the effect the. failure to obey them shall have on the other proceedings with which they were associated in *484 the law.’ — Cooley on Tax. 213. In French v. Edwards, [80 U.S.] 13 Wall. 506 [20 L.Ed. 702 (1871) ], the Supreme Court of the United States said: ‘There
are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which' the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated. But, when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer, in all such cases, is limited by the measure and conditions prescribed for its exercise.’
“In Torrey v. Milbury, [38 Mass.] 21 Pick. 64 [(1838)], the court said: ‘In considering the various statutes regulating the assessment of taxes, and' the measures preliminary thereto, it is not always easy to distinguish which are conditions precedent to the legality and validity of the tax, and which are directory merely, and do not constitute conditions. One rule is very plain and well settled — that all those measures which are intended for the security of the citizen, for ensuring ah equality of taxation, and to enable- every one to know with reasonable certainty for what polls and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent; and if they are not observed, he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax. But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which does in no respect affect the rights of taxpaying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them; but yet their observance is not a condition precedent to the validity of the tax.’ ”
65 Ala. at 149-51 (emphasis added). See also Court of Comm’rs of Washington Cnty. v. State, 172 Ala. 242, 249-51, 55 So. 623, 625-26 (1911) (reaffirming the discussion in State Auditor v. Jackson Cnty.); Brasher v. State, 555 So.2d 184, 190-91 (Ala.Crim.App.1988), affirmed, 555 So.2d 192 (Ala.1989) (describing the distinction in a similar manner).
As the final quoted portion of State Auditor v. Jackson County emphasized above noted,'labeling a provision directory in nature does not relieve public officials from following the statutory direction in the provision. The Court noted in State Auditor v. Jackson County that for directory and mandatory provisions “it is the duty of the assessor to observe and obey; but a failure to conform to those falling within the first class, does not invalidate the assessment, while a non-observance of the mandatory duties renders it wholly void.” 65 Ala. at 155. Likewise, in Birmingham Building & Loan Ass’n v. State, 120 Ala. 403, 25 So. 52 (1899), the *485 Court stressed that in considering a provision to be directory “it is not meant that a duty does not rest upon the officer to act within the time, a duty which he may be' compelled to perform,'but simply that his power to act does not expire with' the time.” 120 Ala. at 409, 25 So. at 54; In other words, the failure to follow a directory provision does not affect the essential power granted to a public official or a public body in a particular statute, but officials still may be compelled to perform the directory duty in th,e future.
The. trial court quoted and cited several of the authorities provided above in reaching the conclusion that, the .timing provision of former § 40-7-42 is directory, while the requirement to levy the amount of property taxes necessary to fund a county’s expenses is mandatory. The trial court deemed the essence of former § 40-7-42 to be the grant to a county commission of the power to levy property taxes for funding county expenses. It considered the timing provision to relate to form and manner, a provision “ ‘intended for the guide of officers in the conduct of business devolved upon them,’ ” which was “ ‘designed to secure order, system and dispatch in proceedings’ ” concerning the levy and subsequent assessment and collection of property taxes. State Auditor v. Jackson Cnty., 65 Ala. at 150 (quoting French v. Edwards, 80 U.S. (13 Wall.) 506, 510, 20 L.Ed. 702 (1871)). Confirming this determination was the fact that former § 40-7-42 did not contain any language detailing a consequence for a failure .to follow the timing provision. See Ex parte Hood, 404 So.2d at 718.
In addition to the above-related general observations as to why the trial' court reached the conclusion it did, the trial court also discussed and relied upon a case from this Court that appears to be directly on point to the statute in issue. Perry County v. Selma, Marion & Memphis R.R., 58 Ala. 546 (1877), was a consolidated appeal consisting of three cases: Perry County v. Selma, Marion & Memphis R.R.; Westem R.R. of Alabama v. Chambers County; and Savannah & Memphis R.R. v. Weaver. The decision pertinent to the present case involved Western Railroad of Alabama v. Chambers County, in which the railroad company alleged that Chambers County had
“attempted to assess and levy a county tax for the year 1875, on that part of [Western Railroad’s] road-bed, main and side track, situated in said county, and that said county is now proceeding by and through its tax collector, Julius G. Weaver, to collect said tax by a- levy upon property of [Western Railroad], located in said county.”
58 Ala. at 549-50. Chambers County levied the property tax under the authority of § 93 of the Revenue Law of 1875-76. Section 93 provided:
“Be it further enacted, That it shall be the duty of the court of county commissioners, at the July term, to proceed to levy the amount of taxes required for their county for that year, not to exceed óne-half of one per centum on the value of all taxable property therein as assessed for revenue to the State; and after the commissioners shall have received the books from the tax assessor, and they shall have corrected errors as provided in this act, the Probate Judges shall make a book containing in a concise form, the amount of taxes due by each tax payer, which book shall show the' amount of tax on real estate and personal property separately, together with the fees of the assessor and collector, which book shall be turned over by the Judge to the tax collector on or before the first day of September in each year; Provided, this act shall not *486 be construed as to repeal any acts authorizing commissioner’s courts to levy special taxes for special purposes.”
(Emphasis added.)
Western Railroad contended that Chambers' County was not entitled to collect the property taxes, arguing, among other things, that “the commissioners’■ court of said county did not levy the tax for county purposes át their July term for 1875, but all the action was taken at their August term for said year.” 58 Ala. at 550. In other words, Western Railroad made the same argument Howard makes in this case, i.e., that the county could not levy and collect the property tax in question because it did not levy the tax at the time it was directed by the statute to do so.
This Court rejected Western Railroad’s argument, stating:
“The only other question we consider it necessary to determine, arises on the averment of the bill of the Western Railroad Company against Chambers county, that the county tax of 1875 was levied .in August of that year, when it should have been done in July, under section 93 of the revenue law of 1875. We hold this provision of the law to be directory, and that such levy made at the regular August, term of the court, as this was done, is valid. — See Hilliard on Taxation, 299, et seq.; Burroughs on Taxation, 249; Cooley, do. 212, et seq.”
58 Ala. at 562.
The trial court here compared the pertinent language from § 93 of the Revenue Raw of 1875-76 (“That it shall be the duty of the court of county commissioners, at the July term, to proceed to levy the amount of taxes required for their county for that year_”) to the pertinent language of former § 40-7-42 (“The county commission, at the first,regular.meeting in February in each year, shall levy the amount of general taxes required for the expenses of the county for the current year_”). The trial court observed that, “[i]n both statutes, the timing provision is set off as an adverbial phrase, separate and apart from the requirement that the commission levy taxes.” The trial court concluded that it was “clear that the logic of Perry County applies to the statute at issue.”
Howard contends that the trial court committed various errors in determining that the timing provision of former § 40-7-42 was directory rather than mandatory and that those errors require the reversal of the trial court’s decision. Howard first argues that the trial court violated the cardinal rule of statutory construction that a court must apply the plain language of a statute, i.e., that it cannot change the words of a statute to fit a desired outcome.
“The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala.1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.”
Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996).
Howard argues that the plain language of former . § 40-7-42 dictates that the Commission must levy property taxes at its first, regula? February meeting and that, therefore, because it did not do so in February 2013, its levy in May 2013 is void. Howard states:
“Section 40-7-42 is not ambiguous in any respect. The Defendants never al *487 leged § 40-7-42 to be ambiguous. And, the Circuit Court made -no finding that § 40-7-42 is ambiguous. In that situation, the Circuit Court lacked authority to interpret § 40-7-42. Nonetheless it proceeded to rewrite § 40-7-42 to remove the timing limitation for the purpose of avoiding what the Circuit Court perceived to be an absurd result if the statute were followed as enacted. Instead of judicially rewriting the statute, the Circuit Court should have simply applied § 40-7-42 to the undisputed facts of this case.”
The problem with Howard’s argument is that his interpretation of the statute is not buttressed by the plain language of former § 40-7-42 any more than is the trial court’s interpretation. Howard contends that a county commission’s failure to follow the timing provision of the statute prevents the county commission from levying property taxes during a particular year. In other words, Howard insists that the statutorily directed timing of the levy is a prerequisite to a valid levy. But the statute does not, on its face, state that that is the case. The trial court held that the timing provision directed county commissions when to levy property taxes but that the power to levy those taxes existed independent of that direction. The statute likewise does not, on its face, state that this is so. Thus, in order to decide this case, the trial court was required to place a judicial construction on the language of the statute that manifested the intent of the legislature.
Howard repeatedly states throughout his brief in one form or .another that the trial court “remove[d] the timing limitation” from the statute, but it did no such thing. The trial court never stated that the Commission did not have to follow the legislative directive to levy property taxes at the first regular February meeting of the Commission or that, in a proper action, a court could not order such compliance. The trial court expressly stated th'at it did not condone the Commission’s action of instituting a levy in May 2013 rather than in February. What the trial court also said, however, was that a failure to follow the timing provision did not negate the Commission’s power to levy property taxes.” That is not the same thing as removing the timing provision from the statute. In short, the trial court’s interpretation of former § 40-7-42 did not fly in the face of the “plain language” of the statute.[4]
In keeping with his assertion that' the trial court read the timing provision out of thé statute, Howard argues that the result of the trial court’s interpretation is that a property-tax levy can occur at any'time. He argues that “a levy can occur after a collection, or even before an assessment. That is legally impossible.” This exaggerates the trial court’s holding. As we have already observed, the trial court did not state that the Commission did not have to follow the timing provision of the statute, nor did it hold that a levy could occur at any time. As Howard notes, this Court has stated: “It is elementary" that there can be no tax due’ until there is a levy.” W.S. Brewbaker, Inc. v. City of Montgomery, 270 Ala. 460, 463, 119 So.2d 887, 890 (1960). The trial court did- not say otherwise. The trial court-was not presented with a scenario in which the Commission attempted to levy taxes before the assessments on property or after the collection of *488 the taxes. The trial court simply held that a levy that occurred after the first regular meeting of the Commission in February is not invalid solely based on its timing.
Howard also argues that, in concluding that the timing provision was directory but that the provision empowering the Commission to levy property taxes was mandatory, the trial court “got it backwards.” He asserts that “[t]he County Commission’s limited authority to levy county ad valorem .taxes is permissive. It is the timing of any levy that is mandatory.” This is so, Howard insists, because “the date for levy of taxes is a component of the annual process of assessment, levy, and collection of ad valorem taxes by the Commission. , Timing cannot be considered, a ‘mere matter of form’ because without a levy there can be no valid tax.” Howard goes so far as to say that the trial court’s reading of the, statute “requires] a county to exercise its taxing authority each year regardless of its financial needs.” Howard contends that such a reading is incorrect because, he argues, the Commission has the power, but not a duty, to levy property taxes for county purposes. For support, Howard cites § ll-3-ll(a)(2), Ala.Code 1975, which states that “[t]he county commission shall have authority ... [t]o levy a general tax, for general county purposes and a special tax, for special purposes, according to this Code.”
Again, Howard exaggerates the trial court’s holding. In finding the provision of the statute pertaining to levying property taxes to be mandatory, the trial court necessarily did so within the confines of the language of the statute. Former § 40-7-42 provides that “[t]he county commission ... shall levy the amount of general taxes required for the expenses of the county for the current year.” (Emphasis added.) The statute itself empowers a county commission to levy only the amount of taxes necessary to meet county expenses. Nowhere in the trial court’s order did it state that the Commission was required to levy taxes even if the county had enough funds to cover its expenses without those taxes. The trial court concluded that the provision for levying property taxes was mandatory for the purpose of meeting county expenses. The provision is mandatory because the essence — or focus — of the statute is the power to levy taxes; the timing of the levy is ancillary to that essence.
Howard may be correct that former § 40-7-42 included a timing provision that mentions an early date in the year because a levy is only the first step in the process of obtaining annual property taxes. But, if true, this fact does hot make the timing provision the essence of the statute; it simply constitutes an acknowledgment that the process requires enough time to assess property in each county and to collect property taxes from each owner of property in each county. In other words, the timing provision is “designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding.” State Auditor v. Jackson Cnty., 65 Ala. at 151.
Howard insists that the timing provision “serves as notice to taxpayers that any levy will occur during the county commission meeting each February” and that “[t]axpayers have a right to rely upon this notice.” It is certainly true that the timing provision could have the effect of giving taxpayers notice of when a levy will occur, but Howard cites no authority stating that that is the purpose of the timing provision. Moreover, the fact that the timing provision can serve as notice to taxpayers of when a levy of property taxes will occur does not demonstrate that the timing provision is an essential prerequisite to the power granted in the statute to *489 levy the taxes. If this were so, then timing provisions in all-tax statutes would be mandatory because each could be said to provide notice to taxpayers, but this Court has established no such blanket rule.
Howard also takes issue with the trial court’s reliance upon the Perry County decision. Howard argues that the situation on which the holding in Perry County is based is distinguishable from the situation in this case because “[t]here are significant and meaningful differences in the' language of each statute.” Specifically, Howard highlights several differences in wording between the two statutes, and he attempts to distinguish Perry County on the basis of those differences.
Howard argues as follows:
“In § 40-7-42, the legislature clearly and unambiguously mandated that if the county commission exercises its discretion to levy county ad valorem taxes, it must do so at the first regular meeting in February in each year. In comparison, § 93 merely recognized a [‘]duty of the court of county commissioners, at the July term, to proceed to levy ... ’ There is no usagé of the phrase ‘shall levy’ or the resultant imposition of a deadline as in § 40-7-42 (i.e., ‘at the first regular meeting in February’).”
Howard also posits that there is a substantive distinction between the phrases “proceed to levy” and “shall levy.” As he puts it: “ ‘[T]o proceed to levy,’ as utilized in § 93, anticipates commencement of a process during the July term without a mandated deadline, while ‘shall levy’ in § 40-7-42 is a mandatory command with a definitive deadline for action — ‘at the first regular meeting in February in each year.’ ” Howard’s only support for this distinction is a citation to the Merriam-Webster’s Online Dictionary that defines “proceed,” in part, as “to continue to do something.”
One problem with this distinction is that the Perry County Court did not read § 93 as saying that all the court of county commissioners had to do was start the process of levying sometime in the July term but that it could finish the process at some other time. The specific argument presented in Perry County was that the taxes were supposed to be levied in July but instead were levied in August. The Court held that instituting the levy in August rather than in July did not invalidate the levy. In other words, the Perry County Court adopted the common-sense understanding of the timing provision in § 93, which was that it was directing the court of county commissioners as to when it should levy property taxes but that a failure to follow this directive did not negate that body’s power to levy property taxes.
In Howard’s final attempt to distinguish the language of § 93 from the language in former § 40-7-42, he argues:
“[T]he phrase ‘at the July term’ in § 93 does not identify a specific date for action, as does the- phrase ‘at -the first regular meeting in February,’ included .in § 40-7-42. The ■ ‘July term’ is a vague term referring to an extended period- of time that could be altered and extended at the discretion of the court of ' county commissioners. More specifically, the ‘July term’ could - have encompassed multiple meetings strung out over a period of weeks or- months, just as if it were a term of court. Thus, § 93 did not impose a limitation on the power to levy taxes, as does § 40-7-42.”
Wé first note that Howard cites absolutely no authority for his interpretation of the phrase “at the July term” in § 93. Second, 'Howard once again ignores the facts presented in Perry County. Again, Western Railroad argued in Perry County that “the commissioners’ court of said *490 county did not levy the tax for county purposes at their July term for 1875, but all the action was taken at their August term for said year.” 58 Ala. at 550. The Court later reiterated that
“the county tax of 1875 was levied in August of that year, when it should have been done in July, under section 93 of the revenue law of 1875. -We hold this provision of the-law. to be directory, and .that such levy made at the regular August term of the court, as this was done, is valid.”
Id. at 562. The clear implication from the Perry County Court’s discussion is that the phrase “at the July term” meant at the court of county commissioners’ July meeting, not some period extending over the course of several weeks or months. Consequently, this difference in wording does not mark a substantive difference between § 93 and former § 40-7-42 that would warrant distinguishing the decision in Perry County.
Howard also faults the trial court for failing to follow the interpretation of former § 40-7-42 provided in opinions of the attorney general over the years. It is true that several attorney general opinions have discussed the timing provision of former § 40-7-42. Most of them did so in merely a descriptive way. See, e.g., Ala. Op. Att’y Gen. No. 2001-141 (March 30, 2001) (“The statute requires the county commission to levy, each year, general and special taxes at its first regular meeting in February.”); Ala. Op. Att’y Gen. No. 1986-00340 (Aug. 21, 1986) (“The County Commission sets the millage rate in February of each year under the provisions of § 40-7-42, Code of Alabama 1975, for all general and special county taxes.”); Ala. Op. Att’y Gen. No. 82-00427 (July 8, 1982) (“We further observed that § 40-7-42, Code of Alabama 1975,. provides for the levy of ad valorem taxes at the first regular meeting in February of each year of the county commission.”). One attorney general opinion, however, appears to take the view that the timing provision triggers a county commission’s power to levy property taxes. See Ala. Op. Att’y Gen. No. 2011-093 (Aug. 30, 2011) (stating that “[s]ection 40-7-42 of the Code makes clear that the Commission must levy the tax at the first regular meeting in February” and concluding that the Monroe County Commission “is not authorized to amend the levy of a tax after the appropriate time for such tax to be levied’’).[5]
Howard notes that this Court has stated that “[t]he interpretation by the attorney general and popular interpretation as exemplified in practice for a number of years will be given weight as a factor in judicial construction of a statute where its meaning is doubtful.” Cherokee Cnty. v. Cunningham, 260 Ala. 1, 4-5, 68 So.2d 507, 510 (1953). Although this is true, we also have observed that attorney general opinions “are not controlling, but merely advisory?’ State Dep’t of Revenue v. Arnold, 909 So.2d 192, 194 (Ala.2005). The reason for *491 their advisory nature is abundantly clear in- a situation such as this one. None of the attorney general opinions cited by Howard directly addressed the question whether a levy by a county commission done outside the time frame of the timing provision in former § 40-7-42 is void for that reason. This is not surprising, given that when public officials ask for attorney general opinions those officials are usually seeking advice on prospective actions. Because of this fact, it is also not surprising that the office of the. attorney general does not advise public officials to ignore a statutory directive. Instead, the attorney general advises public officials as to what the law commands. In this instance, it is indisputable that former § 40-7-42 required county commissions to levy property taxes in their first regular February meeting of a given year. The question before the trial court and before .us in this appeal, however, concerns the effect of a failure to follow that directive, a question not posed or answered in the attorney general opinions.-
Moreover, as we have already noted, our own opinion in Perry County contradicts the interpretation in Attorney General Opinion No. 2011-093. Our own precedent obviously takes priority over an opinion of the attorney general. In addition, other decisions of this Court concur with the interpretation in Perry County that timing provisions like the one in former § 40-7-42 are directory rather than mandatory.'
Stickney v. Huggins, 10 Ala. 106 (1846), concerned an action by the Mobile County treasurer against a county tax collector for failure to forward the full amount of taxes he had collected on behalf of the county. A judgment was rendered against the tax collector for $2,134.33, but the judgment was reversed by this Court and the case remanded for further proceedings. Upon commencement of the new trial, the defendant tax collector argued that the trial court was without jurisdiction to try -the case because, in contravention to the statutory basis for the action, the cause was heard more than 20 days after the Mobile County treasurer had filed a complaint against the tax collector. The trial court dismissed the action, and-the Mobile County treasurer appealed; . The statute in question provided:
“Tf any person authorized by law to collect the taxes in any of the counties of this State, shall fail to collect and pay the same to the county treasurer, within the time prescribed.by law, the Judge of the county court, if of his own knowledge, or on complaint of the treasurer, shall hold a special court within twenty days-,thereafter, to try such delinquent collector; and if it appear that he has so failed to collect, or pay .over such taxes, said court shall enter judgment in favor of the treasurer, against such collector and his security, or securities in office, for the amount of such county tax so due and unpaid, together with ten per cen-tum as damages, on the amount,’ & c. Clay’s Dig. 675, § 96.”
10 Ala. at 108 (emphasis added). This Court reversed the judgment dismissing the action, reasoning:
“Although this section addresses itself ' in mandatory terms to the Judges of the •county courts, yet it cannot be understood, that in requiring him to act within twenty days from the time the default is developed, his right to act is limited to that period. Time was not prescribed for the benefit of the collector, but rather to quicken the diligence of the Judge, so that justice might be promptly administered, and the greater certainty of collections insured.
“According to all analogies, in directing the proceedings to be instituted *492 within a definite time,- the act must be considered as directory merely. It is the duty of the Judge to yield a ready obedience to its directions, but if he fails to do this, his authority to act under it is not gone.”
10 Ala. at 108-09 (emphasis added). See also Boring v. Williams, 17 Ala. 510, 518 (1850) (reaching the same conclusion concerning the act at issue in Stickney). Despite the wording of the statute that the judge “shall hold a special court within twenty days” of the filing of the complaint, this Court interpreted the timing provision to be directory rather than mandatory.
• A similar decision was reached in Birmingham'Building & Loan Ass’n v. State, 120 Ala. 403, 25 So. 52 (1899). In Birmingham Building & Loan Association, the Birmingham Building & Loan Association' (“BB <& L”) paid its taxes to the tax assessor of Jefferson County for the year 1896 within the time prescribed by law. On July 2, 1896, the Jefferson County Board of Tax Equalization (“the Board”) issued a citation notifying BB & L that in a regular session held on July 2,1896, the Board had raised the tax assessment on BB & L’s property and that the cause was set for a hearing at the next regular session of the Board, to be held on July 10, 1896. BB & L appeared at the hearing, and it filed a motion to dismiss the cause on the ground that the Board had not performed the equalization at its May meeting as it was statutorily required to do. This Court explained:
“By section 5 of the ‘Act to amend the revenue laws of Alabama,’ approved February 18, 1894 (Acts 1894-95, p. 1192), a county board of equalization of taxes in each county is created, in the manner therein specified.
“Section 31 of said act provides that said board will convene -at the court house of the county on the first Monday in May, and shall rigidly examine each assessment list, and compare all such lists carefully with the book, of assessment, and institute inquiry as to the correctness of any assessment of real or personal property, or subject of taxation; and if upon such inquiry any ■assessment, whether made by the taxpayer, his agent, or by the assessor, is supposed not to be full and complete, or the property assessed at less or more than its actual value, or that property has been omitted that should have been assessed, the said board of equalization shall enter the same on a docket to be kept for that purpose by said board in the name of the state of Alabama as plaintiff and the tax-payer as defendant, and shall issue a notice and copy thereof, addressed to the tax-payer, stating the substance of the supposed error, improper’ assessment, under-valuation or over-valuation, and citing such tax-payer to appear before said board of equalization on the first Monday in June, to show cause why such error, omission, or under-valuation should not be corrected, and in what respect....”
120 Ala. at 404-05, 25 So. at 53 (emphasis added). This Court stated:
“[Tjhe principal question presented for our decision is whether or, not it was essential to the lawful exercise of the jurisdiction which the act confers upon the board that the preliminary ex parte action in reference to raising the assessment ' and issuing the citation should have been had at the May term, in strict conformity to the statute.”
120 Ala. at 407, 25 So. at 54. The Court concluded that “the proceeding was not without the jurisdiction of the board, either of the subject-matter or person.” 120 Ala. at 410, 25 So. at 55. The Court reasoned:
*493 “A statute specifying a time within which a public officer is to perform■ an official act affecting the rights of others is directory merely, as to the time within which the act is to be done, unless, from the nature of the act or the phraseology of the statute, the designation of the time must be considered a limitation on the power of the officer....
“‘By this it is not meant that a duty does not rest upon the officer to act within the time, a duty which he may be compelled to perform, but simply that his power to act does not expire with the time....
“ “When a statute directs an officer to do a thing in a certain time, without any negative words restraining him from doing it afterwards, the naming of the time will not be construed as a limitation of his authority.’ ”
120 Ala. at 409, 25 So. at 54 (quoting Commissioners’ Court v. Rather, 48 Ala. 433, 440 (1872) (emphasis added)).
In short, our cases confirm that timing provisions such as the one in former § 40-7-42 are directory rather than mandatory and that a failure to follow such a timing provision is not a prerequisite to being able to exercise the power that is the essence of the statute; That interpretation was confirmed in the one case directly on point, Perry County, in which this Court was called upon to interpret a predecessor to former § 40-7-42, and the Court turned aside the exact kind of argument made by Howard in this case. The understanding that the timing provision is directory rather than mandatory also flows naturally from the language of the statute. For all those reasons, we conclude that the trial court correctly held that the timing provision is directory in nature and that the Commission’s May 2013 levy was valid.
Howard next argues that the trial court erred in denying his due-process- claims. Howard argues that the Commission’s failure to follow the timing provision of former § 40-7-42 violated his right to due process of law under the Fourteenth Amendment to the United States Constitution in two ways. First, he contends that the revenue commissioner’s collection of taxes without a valid levy constituted a taking of his property without due process of law. Second, he contends that the levy in Máy 2013 violated his due-process right of notice and opportunity to be heard before the taxes were levied.
The problem with these arguments is that they are premised on the notion that the timing provision of former § 40-7-42 was mandatory. Because the timing provision was, in fact, directory, the Commission’s May 2013 levy of property taxes was valid. Therefore, Howard’s property was not taken without due process of law. Moreover, because the timing provision was directory, and thus primarily intended for the benefit of Cullman County’s public officials rather than for.the protection of the taxpayers, the statute did not grant a constitutional right of notice and an opportunity to be heard. Accordingly, as the trial court concluded, Howard’s due-process claims lacked merit.
Howard’s final argument is that the trial court erred in concluding that his assertion of immunity to the allegedly retroactive tax liability imposed by Act No. 2014-433 lacked a legal basis. Howard states that his basis for being immune from the “retroactive” taxes “arises from the' protections afforded by §§ 13, 22, 43, and 95 of the Alabama Constitution and from the due process clause of the Fifth and Fourteenth Amendments of. the U.S. Constitution.” Although Howard does not elaborate on his “immunity” claim, its premise is the same as his other claimed constitutional violations pertaining to Act No. 2014^433, i.e., that the legislature cannot *494 ratify an illegal tax. Because the trial court concluded that the May 2013 tax, levy was valid, however, Act No. 2014-433 did not ratify an illegal tax. Therefore, Howard’s immunity argument is immaterial.
IV. Conclusion ’
The trial court correctly concluded that the Commission’s failure to follow the timing provision of former § 40-742 did not invalidate its subsequent levy in 2013 of property taxes upon Howard and other property owners in Cullman County. Therefore, we affirm the summary judgment on all of Howard’s claims in favor of Cullman County and the revenue commissioner.
AFFIRMED.
MOORE, C.J., and MAIN, J., concur.
BOLIN and BRYAN, JJ,, concur in the result.

. Howard notes that notice of the timing provision in former § 40-7-42 was regularly provided to county commissions by the Association of County Commissions of Alabama. The notice dated January 22, 2013, stated: "For your agenda in February: Here’s a reminder that the commission is required to levy taxes for the coming year at its first regular meeting in February, according to Ala.Code Section 40-7-42. (This applies only to ad valo- . rem taxes.).” Howard also notes that the Commission set the levy in 2014 during its first meeting in February of 2014,

. The defendants inform us that property-tax levies have been challenged in at least five other counties: Pickens County (Mary Hammett v. Pickens County, Case No. CV-2014-900015); Walker County (Donald Joe Stephens v. Walker County, Case No. CV-2014-900038); Fayette County (Lori Mancone Cain v. Fayette County, Case No. CV-2014-900004); Elmore County (James A. Sutherland v. Elmore County, Case No. CV-2014-900211); and Autauga County (Mark A. Sheridan v. Autauga County, Case No. CV-2014-900096).

. Howard specifically states in his brief that, because his challenges to the constitutionality of Act No, 2014-433 "were not considered or decided by the Circuit Court[, they] should not' be reviewed by this Court in this appeal,"

. Howard’s separate argument that the trial court "engag[ed] in an impermissible exercise of legislative power in violation of section 43 of the Alabama Constitution” is simply a reiteration of his charge that the trial .court did not apply the plain language of the statute and instead interpreted it the way the trial court thought it should read. It therefore requires no further response.

. Howard asserts that a second attorney general opinion provided the same interpretation, namely Ala. Op. Att’y Gen. No. 2001-184 (May 15, 2001), which states that ”[i]f the [Chilton] county commission did not levy the tax at its February 20Q1 meeting, it may. do so at its first regular meeting in February 2002." The attorney general was not asked in that opinion, however, whether a levy initiated in a meeting after the Chilton County Commis- , sion's February meeting was invalid, It was simply asked when a special tax authorized under a specific act (Act No. 2000-370, Ala. Acts.2000) was supposed to be collected, and the attorney general’s opinion referred the Chilton County Commission to former § 40-7-42 for guidance becaus'e Act No. 2000-370 stated that “the tax Collector of Chilton County shall collect the tax in the same manner and method that other ad valorem faxes are collected,"