Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2024-0635

_____

## Ex parte Terrell Demetrius Bailey

## PETITION FOR WRIT OF HABEAS CORPUS

## (In re: State of Alabama

## v.

## Terrell Demetrius Bailey)

## (Montgomery Circuit Court: DC-2024-901178)

COLE, Judge.

The petitioner, Terrell Demetrius Bailey, was denied bail for his first-degree-human-trafficking charge and filed this petition for a writ of habeas corpus, asking this Court to "either set bail at a reasonable

amount with reasonable conditions" or direct the Honorable J.R. Gaines, Presiding Judge of the Circuit Court of Montgomery County,[1] to "set a bail at a reasonable amount with reasonable conditions." (Bailey's petition, p. 11.) Bailey also asks this Court to "remand this case with instructions for the circuit court to make ... written findings and written reasons for denying bail." (Bailey's petition, p. 16.)

On July 9, 2024, Bailey was charged with committing human trafficking in the first degree, a violation of § 13A-6-152, Ala. Code 1975. (Bailey's petition, Ex. A.) Bailey was arrested on July 11, 2024. (Bailey's

---

[1]Judge J.R. Gaines, the Presiding Judge of the Montgomery Circuit Court, signed the orders in this case as a "Circuit Judge." In addition, the orders are styled from "the Circuit Court of Montgomery County." Moreover, Bailey's motion requesting that the court vacate its order denying bail was also purportedly filed in the circuit court. Finally, the transcripts from the multiple hearings in this case also indicate that the hearings occurred in the "circuit court." The only things suggesting that the case was in "district court" are the case number and the electronic stamps on the motions and orders. (At the time of the proceedings below, it appears that Bailey had been arrested, but not indicted, for first-degree human trafficking.) It is, thus, clear from the materials before this Court that Judge Gaines was acting as a circuit-court judge when he denied Bailey bail and denied Bailey's motion to vacate the order denying him bail. See § 15-13-107(a), Ala. Code 1975 ("Judges of any court within the state may accept, take, and approve bail within the jurisdiction of their respective courts"). "[T]his Court will entertain original petitions for a writ of habeas corpus arising out of a circuit court's denial of … bail." Ex parte Colbert, 717 So. 2d 868, 870 (Ala. Crim. App. 1998).

petition, Ex. C.)  Bailey's pretrial detention hearing on this charge was held by the circuit court on July 17, 2024, at which Bailey was represented by counsel.  (Bailey's petition, Ex. H.)

The circuit court noted at the outset of the detention hearing that Bailey had previously been "charged with assault in the first degree on or about October 19th of 2023" and that, since Bailey had been released on bond in that first-degree assault case, he had been "charged with human trafficking in the first degree, reckless endangerment, receiving stolen property in the first degree, and a class B attempt to elude" law enforcement.  (Bailey's petition, Ex. H.; R. 6-7.).  Bailey acknowledged that he had incurred those new charges while he was free on bond for the first-degree-assault charge, that a condition for the previous bond was "to refrain from committing any new criminal offenses," and that the State had filed a motion to revoke the previous bond, in addition to asking the circuit court to deny bail in this case.  (Bailey's petition, Ex. H.; R. 5-7, 23.)  The hearing on July 17, 2024, was solely to determine whether Bailey should be allowed bail for this most recently charged new offense of first-degree human trafficking.  (Bailey's petition, Ex. H.; R. 9.)  The State presented two witnesses, Agent Blythe Reed and Agent Bryan

3

Goza, in support of its arguments that Bailey should be denied bail. (Bailey's petition, Ex. H.; R. 9.)

Agent Reed testified that a 16-year-old runaway had been held against her will by Bailey at Bailey's residence for about "a week, week and a half," where she reported being both physically and sexually assaulted by Bailey and "other unknown males." (Bailey's petition, Ex. H.; R. 15, 23.) Bailey had been talking to the victim through the Facebook social-media site "for about three years" before this occurred. (Bailey's petition, Ex. H.; R. 15.) The victim told law enforcement that, when she decided to run away from home, Bailey picked her up and took her to his house and, when "she wanted to leave," Bailey "started slapping her and would not allow her to leave." (Bailey's petition, Ex. H.; R. 16.) She reported that Bailey repeatedly raped her. She also reported that Bailey would drug her with a clear liquid that made her feel like she could not move and then, "other unknown males ['three or four a night'], would come in, hand [Bailey] cash" and "proceed to have sex with her." (Bailey's petition, Ex. H.; R. 16, 18-19, 24.) In addition, the victim said that Bailey would take pictures and make video recordings of her on a cellular telephone. The victim did not know whether the pictures or videos had

4

been posted on a commercial site, but Bailey's cellular telephone revealed searches of a "commercial sex site where you can either purchase or post" people for sale, including both females and males, as well as minors. (Bailey's petition, Ex. H.; R. 22.) Two other females were also in Bailey's residence during the time the victim was held there, and Agent Reed testified that those individuals corroborated the victim's allegations.

In addition, a sexual-assault examination was conducted on the victim, and it revealed "edema, bleeding, other types of trauma" to her genital area. (Bailey's petition, Ex. H.; R. 18.) After escaping Bailey's residence, the victim was placed "in a psych hold for suicide." (Bailey's petition, Ex. H.; R. 14, 24.) Bailey's counsel requested the name of the victim at the hearing, but the State protested "for safety purposes" because Bailey had mentioned "on some of his jail telephone calls" for someone to "find her." (Bailey's petition, Ex. H.; R. 28.) Based on the "indication that there's a threat against them or any violence or anything," the circuit court ruled that Bailey's hearing would continue with only the victim's initials being used, although, the court further ruled, counsel should be given the name "in discovery, but not today." (Bailey's petition, Ex. H.; R. 29.)

Agent Goza testified that Bailey told him that the women were "lying on him" and had "broke[n] into his house." (Bailey's petition, Ex. H.; R. 41.) Bailey also provided Agent Goza with two pictures showing "a very, very large footprint on [his front] door, and what looks like a broken pane." (Bailey's petition, Ex. H.; R. 40, 42.) Bailey did not testify or present any witnesses at the hearing.

At the conclusion of the testimony, Bailey's counsel stated:

"Obviously, with the severity of these charges, this testimony that's been presented, I wouldn't dare ask you to be below [the bail schedule]. I'm not even asking you to stay within it. We would ask that you impose some number to give him the opportunity to post bond in the event that this assault bond is not revoked.

"We would ask, that as a condition of the bond in this case, that you impose an ankle monitor to be monitored, not by a bonding company, but by the Alabama Board of Pardons and Paroles, which is specifically authorized by statute in these types of cases. …

"We would ask that … he be limited to his house, his mother's house. …

"… I would ask that he be limited to just those work endeavors …. Otherwise, he needs to be at the house. He don't need to be anywhere else.

"We would ask that he have a strict curfew that would be set. …

6

"We would certainly not object to <u>no social media of any kind</u> at all."

(Bailey's petition, Ex. H.; R. 45-47 (emphasis added).)

Bailey's counsel also stated that Bailey should "certainly [have] no contact with anyone alleged to have been involved in this case whether they're victims or other alleged perpetrators." (Bailey's petition, Ex. H.; R. 47.) Bailey's counsel further suggested that Bailey should have "[n]o contact with juveniles, other than immediate family … and then we would not object to it being supervised by an adult family member." (Bailey's petition, Ex. H.; R. 47.) Bailey's counsel concluded that "any other reasonable conditions" should be imposed, and he explained that he was asking the court to "set a high bond, and put all these additional conditions on it." (Bailey's petition, Ex. H.; R. 47-48.)

The State asked the circuit court to deny Bailey bail because he committed the new offense while already free on bond for the first-degree-assault charge. The State also emphasized the "heinous allegations," the sexual-assault-examination report, and the other witnesses, all of whom corroborated the victim's allegations, as well as the safety risk to the victim if Bailey was released on bond based on the jail telephone calls instructing someone to "find her." (Bailey's petition, Ex. H.; R. 49-50.)

7

The court stated that it would "make a decision soon." (Bailey's petition, Ex. H.; R. 55.)

On Monday, July 22, 2024, at 8:41 a.m., the circuit court filed its written order denying bail, noting that the State had presented two witnesses, Agent Reed and Agent Goza, at the pretrial detention hearing and that, "[a]fter hearing the information presented to the Court, the Court is convinced by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the Defendant's presence or protect the safety of the community." (Bailey's petition, Ex. E.) Accordingly, the circuit court ruled that Bailey would be held without bail on the first-degree-human-trafficking charge.

The same day the circuit court issued its order denying Bailey bail, Bailey moved the circuit court to vacate its order because it was "untimely, as it was issued more than 48 hours after the July 17, 2024, pretrial detention hearing." (Bailey's petition, Ex. F.) Bailey also asserted that the circuit court's order did not comply with the requirement that it provide written findings of fact and written reasons for denying bail. The circuit court held a hearing on Bailey's motion to vacate the order denying bail. At the conclusion of those arguments, a

8

bond-revocation hearing was held, regarding Bailey's bond for first-degree assault, based on additional new offenses that Bailey had allegedly committed. (Bailey's petition, Ex. I and Ex. J.) However, because State Trooper Samuel Vason was unavailable to testify, the hearing on both Bailey's motion to vacate the order denying bail and on the State's bond-revocation motion was continued.

On August 1, 2024, evidence was presented to the circuit court indicating that, on February 8, 2024, Bailey incurred three additional criminal charges for reckless endangerment, felony attempt to elude police, and the receipt of stolen property. Trooper Vason testified that he observed Bailey driving an Orange Charger at speeds exceeding 100 miles per hour and driving down the wrong side of the road and "barely missing vehicles." (Bailey's petition, Ex. J.; R. 30.) Trooper Vason activated his "lights and sirens," but Bailey did not stop until hitting a curb, at which point Bailey fled on foot. (Bailey's petition, Ex. J.; 31-34.) The vehicle Bailey was driving had been reported stolen, and the license plate had been switched. Based on that testimony, the State again argued that Bailey posed a flight risk and presented a safety risk "to the community and to the victim [in the human-trafficking case]." (Bailey's

petition, Ex. J.; R. 42-45.) The State also reiterated that Bailey had made telephone calls while he was in jail, instructing someone to "find her," and argued that the trafficking victim was "in grave danger" from Bailey. (Bailey's petition, Ex. J.; R. 42-44.) The State asked the court to revoke Bailey's bond on his first-degree-assault charge <u>and</u> to not vacate its order denying Bailey bail for the first-degree-human-trafficking charge.

On August 13, 2024, the circuit court denied Bailey's motion to vacate its previous order denying bail for the first-degree-human-trafficking charge.

<u>Analysis</u>

In his petition, Bailey argues that the circuit court's Monday, July 22, 2024, order denying him bail, following the Wednesday, July 17, 2024, hearing, failed to comply with the provisions in § 15-13-3(b)(8), Ala. Code 1975. First, Bailey argues that, because the circuit court did not enter an order denying him bail within 48 hours of his pretrial detention hearing, "the circuit court … was required to set a bail … with reasonable conditions." (Bailey's petition, p. 6.) Second, Bailey argues that, at a minimum, this case should be remanded because "[t]he circuit court's untimely order denying bail does not contain 'any findings of fact' nor

10

does it contain any reasons for denying bail.'" (Bailey's petition, p. 11-12.)

Section 15-13-3(b)(1)(g), Ala. Code 1975, provides:

"<u>The court</u>, after a hearing as provided in this subsection, after the presentment of an indictment or a showing of probable cause in the charged offense, and if the prosecuting attorney proves by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the defendant's appearance in court or protect the safety of the community or any person, <u>may deny a defendant's bail, if he or she is charged with … [h]uman trafficking in the first degree</u>, as provided in Section 13A-6-152[, Ala. Code 1975]."

(Emphasis added.) Section 15-13-3(b)(8) further provides: "In an order denying bail, the judge shall make written findings or state for the record findings of fact and a statement of the reasons for denying bail. The judge shall enter an order denying bail within 48 hours of the hearing." With these provisions in mind, we consider Bailey's arguments and hold that Bailey is not entitled to relief.

I.   <u>Failure to Comply with § 15-13-3(b)(8)'s Timing Provision</u>

Section 15-13-3(b)(8) provides that "[t]he judge shall enter an order denying bail within 48 hours of the [pretrial detention] hearing." Based on this provision, Bailey insists that the court lost its "authority" to deny him bail when it did not issue its order within 48 hours of the hearing, as

11

directed by the statute. Conversely, the State argues that a court retains its constitutional and statutory power to deny bail beyond 48 hours. We agree with the State. Although § 15-13-3(b)(8) required the court to issue its order denying bail on Friday, July 19, 2024, the circuit court did not lose its power to deny Bailey bail for his first-degree-human-trafficking offense on Monday, July 22, 2024, because the timing provision is directory, not mandatory. In addition, even if the provision was intended to be mandatory, there is no indication that the provision was intended to be <u>jurisdictional</u>, such that noncompliance results in a complete loss of a court's <u>power</u> to deny bail. Moreover, to the extent that the circuit court erred by not issuing a timely order, any error was harmless.

A.   <u>The 48-hour timing provision is directory, not mandatory.</u>

The 48-hour timing provision of § 15-13-3 is directory, not mandatory, because it does not relate to the essence of the statute, which is to provide courts the power to deny bail for certain serious offenses, including first-degree human trafficking. The absence of a remedy for noncompliance further indicates that the Legislature intended this provision to be directory only. Indeed, to hold that any failure to strictly comply with the timing provision in denying bail divests a court of its

12

power to deny bail would have the effect of thwarting the clear legislative purpose, which was to make certain offenses nonbailable to both protect the public and ensure that a defendant appears for trial.

In reaching our conclusion that the timing provision is directory, we find the Alabama Supreme Court's decision in Howard v. Cullman County, 198 So. 3d 478 (Ala. 2015), to be instructive. In Howard, the Alabama Supreme Court considered whether a statutory timing provision that required taxes be levied in February of each year was mandatory after Howard challenged the levying of taxes approximately three months after the designated time. Howard argued that, because the taxes were not levied in February, the levy was invalid. In rejecting Howard's argument, the Alabama Supreme Court first noted that "[t]he distinction drawn … between directory and mandatory provisions of a statute is well established." 198 So. 3d at 483. "Our courts have continued to apply this distinction to the interpretation of statutes up to the present day." Id.

> "'The distinction between a mandatory provision and one which is only directory is that when the provision of a statute is the essence of the thing to be done, it is mandatory. Under these circumstances, where the provision relates to form and manner, or where compliance is a matter of convenience, it is directory. Rodgers v. Meredith, 274 Ala. 179, 146 So. 2d 308

13

(1962); <u>Board of Education of Jefferson County v. State</u>, 222 Ala. 70, 131 So. 239 (1930). In making this determination, it is legislative intent, rather than supposed words [of] art such as "shall," "may" or "must," which ultimately controls.'"

<u>Id.</u> (quoting <u>Mobile Cnty. Republican Exec. Comm. v. Mandeville</u>, 363 So. 2d 754, 757 (Ala. 1978)) (emphasis added). "Thus, a statutory requirement is directory if it 'merely prescribe[s] a rule of legislative procedure that to violate would not avoid the enactment.'" <u>Id.</u> (quoting <u>Coleman v. Town of Eutaw</u>, 157 Ala. 327, 333, 47 So. 703, 705 (1908)). By contrast, "[a] requirement is mandatory if it '"relate[s] to the essence of the thing to be done."'" <u>Id.</u> (quoting <u>Alabama Pine Co. v. Merchants' & Farmers' Bank of Aliceville</u>, 215 Ala. 66, 67, 109 So. 358, 359 (1926), quoting in turn 25 R.C.L. 767, § 14).

In distinguishing a directory provision from a mandatory provision,

"'[i]t may be stated as a general proposition that <u>a mandatory statute</u> is one which <u>prescribes</u>, in addition to the requirement of performing the thing specified, <u>the result obtained if that performance is not done; if the statute is directory only, the statute's content is limited to the performance required</u>.'"

<u>Howard</u>, 198 So. 3d at 483 (quoting <u>Ex parte Hood</u>, 404 So. 2d 717, 718 (Ala. 1981)) (emphasis added).

In addition,

> "'[t]he cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So. 2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.'"

Howard, 198 So. 3d at 486 (quoting Ex parte State Dep't of Revenue, 683 So. 2d 980, 983 (Ala. 1996)) (emphasis added).

After considering these principles of statutory interpretation, the Supreme Court recognized in Howard that the timing provision was not the "essence" of the statute, which was "the power to levy taxes." 198 So. 3d at 488. Moreover, "[t]he understanding that the timing provision is directory rather than mandatory also flows naturally from the language of the statute" because the statute provides no remedy for noncompliance with the timing provision. Id. at 493. Accordingly, the Court held that the timing provision regarding the levying of taxes was "directory rather than mandatory and that a failure to follow such a timing provision is not a prerequisite to being able to exercise the power that is the essence of the statute." Id. at 493. The Supreme Court also rejected Howard's due-process claims because those claims were "premised on the notion

15

that the timing provision … was mandatory," and, it held, because the timing provisions were "primarily intended for the benefit of Cullman County's public officials rather than for the protection of the taxpayers, the statute did not grant a constitutional right of notice and an opportunity to be heard."[2] Id. at 493.

Applying these principles, we conclude that the 48-hour timing provision of § 15-13-3(b)(8) is directory, not mandatory.

---

[2]We recognize, as Bailey contends, that unlike the tax-levying statute at issue in Howard, the Legislature surely intended the timing provision of § 15-13-3 to be for the benefit and protection of a defendant. Unlike the tax-levying statute, § 15-13-3 establishes a process by which defendants are provided notice and an opportunity to be heard. Clearly, because a liberty interest is a stake, any denial of bail must comply with minimum standards of due process. See, e.g., Ex parte Green, 391 So. 3d 396, 400 (Ala. Crim. App. 2023) (holding that both "§ 15-13-3(b)(7)a. and § 15-13-3(b)(7)b. must be satisfied to reopen a pretrial detention hearing" to satisfy due-process requirements and recognizing that "allowing the pre-trial detention hearing to be reopened … without requiring the State to first file a motion would deprive the defendant of notice of the State's intent to revisit the question of whether the defendant should be denied bail"; "[n]otice is a key component of procedural due process"). However, Bailey has not raised a due-process argument in his petition to this Court. Moreover, as discussed herein, principles of due process are not offended by a brief delay like the two-day weekend delay here. As also discussed in part I.C. of this opinion, Bailey suffered no prejudice by the delay. Rather, the circuit court denied Bailey bail after determining that "no condition or combination of conditions of release will reasonably ensure [his] presence or protect the safety of the community." (Bailey's petition, Ex. E.)

First, the 48-hour timing provision is not the "essence" of § 15-13-3, which became effective on November 28, 2022, the same day the constitutional amendment known as "Aniah's Law," which was "overwhelmingly approved" by Alabama voters in 2022. Ex parte Green, 391 So. 3d 396, 398 (Ala. Crim. App. 2023). Specifically, both "Aniah's Law," Ala. Const. 2022, Art. I, § 16, and § 15-13-3 made multiple crimes, including first-degree human trafficking, no longer bailable as a matter of right. See Ex parte Carter, [Ms. CR-2023-0793, Dec. 20, 2024] ___ So. 3d ___, ___ n. 2 (Ala. Crim. App. 2024). The constitutional amendment and corresponding statute, § 15-13-3, were precipitated by the kidnapping and murder of Aniah Blanchard, "a 19-year-old college student." Ex parte Green, 391 So. 3d at 398 n. 1. The alleged perpetrator was "a man who was free on bail for various violent offenses," which "caused a groundswell of support to remove" the right to bail for certain charged offenses. Id. Clearly, the purpose of Aniah's Law was to protect the public from those charged with violent offenses by granting courts the power to deny bail for those charged with certain serious offenses, like first-degree human trafficking. Likewise, the "essence" of the corresponding statute, § 15-13-3, is to give effect to Aniah's Law by

17

providing a process by which bail may be denied to those persons charged with committing one of the offenses that are no longer bailable as a matter of right under Aniah's Law. See id. at 398 ("Aniah's Law, among other things, amended § 15-13-3, Ala. Code 1975, to provide a process for the denial of bail for certain enumerated offenses."). Stated differently, the essence of § 15-13-3 is to statutorily provide courts the power conferred by the Alabama Constitution's Aniah's Law amendment. Section 15-13-3 also provides courts a means for exercising this power in a manner that comports with the minimum standards of due process. However, "[t]he [timing] provision relates to form and manner" by which the statute allows a court to deny bail to defendants like Bailey and, thus, "is directory," not "mandatory." Howard, 198 So. 3d at 483.

Second, the Legislature did not provide any consequence for a court's failure to comply with the 48-hour timing provision within this statute. Rather, "the statute's content is limited to the performance required," which also indicates that the timing provision is directory, not mandatory. Howard, 198 So. 3d at 483. In short, procedural requirements are not clearly stated in § 15-13-3 as "prerequisite[s] to [a court's] being able to exercise the power that is the essence of the statute"

18

-- here, a court's power to deny bail for certain serious offenses, like first-degree human trafficking. Id. at 493.

In sum, a court is not divested of its power to consider whether, based on evidence presented at a pretrial detention hearing, no "condition or combination of conditions ... [would] reasonably ensure the defendant's appearance in court or protect the safety of the community and of any person" and, ultimately, to deny bail merely because of noncompliance with a timing provision for which the Legislature has provided no consequence. § 15-13-3(b)(5), Ala. Code 1975. In other words, a court's power to deny bail exists independent of the 48-hour timing provision, which merely governs the exercise of a court's power.

Our holding that the 48-hour timing provision is not mandatory is further bolstered by the fact that, within the same statute, the Legislature also grants courts the power to reopen "[a] pretrial detention hearing … at any time prior to trial if the court finds that information exists that was not known by the movant at the time of the pretrial detention hearing." § 15-13-3(b)(7)(b), Ala. Code 1975 (emphasis added). Quite simply, it would be illogical to hold that a departure from the 48-hour timing provision would deprive a court of its power to deny bail

when, within the same statute, the Legislature expressly provides that courts retain the authority to reconsider a previous ruling and to deny bail <u>at any point prior to trial</u>.  <u>But see</u> <u>Ex parte Green</u>, 391 So. 3d at 400 (holding that both requirements of  "§ 15-13-3(b)(7)a. [(that a motion must be filed by the prosecuting attorney)] <u>and</u> § 15-13-3(b)(7)b. [(that new information exists)] must be satisfied to reopen a pretrial-detention hearing" to satisfy the <u>notice</u> component of due process.)

For these reasons, we hold that the 48-hour timing provision is directory, not mandatory, and that the circuit court, thus, retained its <u>power</u> to deny Bailey bail after the 48-hour period had expired.  Quite simply, "the failure to follow a directory provision does not affect the essential power granted to a public official or a public body in a particular statute."  <u>Howard</u>, 198 So. 3d at 485.  <u>See also</u> <u>Alabama Bd. of Pardons & Paroles v. Dyer</u>, 343 So. 3d 42, 44 (Ala. Crim. App. 2020) (holding that, despite the statutory requirement in § 15-22-32(a), Ala. Code 1975, that a parole-revocation hearing officer "shall" conduct a revocation hearing "'within 20 business days and consider the case of the parole violator …. [and i]f a hearing is not held within the specified 20 business days, the parolee shall be released back to parole supervision,'" "[t]he statute does

20

not, however, prevent the Board from conducting a revocation hearing outside the 20-day period, nor does it render void any action taken by the Board outside the 20-day period"); J.M.V. v. State, 651 So. 2d 1087, 1092 (Ala. Crim. App. 1994) (holding that "the provision of § 12-15-34(a)[, Ala. Code 1975,] that the prosecutor consult with probation services before filing a motion to transfer is directory only," explaining that the statute "prescribes no result for a failure to engage in such consultation," as well as recognizing that it would be "untenable" to bind a prosecutor to "the advice of probation services"); and McDonald v. State, 32 Ala. App. 606, 609, 28 So. 2d 805, 807 (1947) (holding that a penal statute that made it a misdemeanor to engage in plumbing without a license and limited the definition of "plumbing" to pipes within "three to five feet" of a structure was a "directory" provision such that a conviction for connecting pipes six feet from a building was not invalid; "[a] literal interpretation" of the provision would "defeat the purpose" of the statute; "even penal laws are not to be construed so strictly as to defeat the obvious intent of the legislature").

B.    Even if mandatory, the timing provision is not "jurisdictional."

Even if we were to hold that the 48-hour timing provision in § 15-13-3(b)(8) was mandatory, which we do not, there is no indication that the Legislature intended this provision to be "jurisdictional," such that a court would be deprived of all power to deny bail by not strictly complying with this provision.

In Ex parte Nixon, 729 So. 2d 277, 278 (Ala. 1998), the Alabama Supreme Court considered whether a final order affecting "substantial interests," entered after a hearing under the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala. Code 1975, was "unenforceable" because "it was issued more than 30 days after the hearing." The statute under consideration expressly stated that such an order "'shall be rendered within 30 days … [a]fter the hearing is concluded.'" Id. (quoting § 41-22-16, Ala. Code 1975). The Alabama Supreme Court recognized:

> "[I]t does not follow that the use of the word 'shall' always signals that the legislature intended for noncompliance with a mandatory provision to be fatal to a decision of an administrative agency, where the intent of the legislature, as disclosed by all the terms and provisions of the statute in relation to the subject of the legislation and the general object to be accomplished, would be defeated by such an interpretation."

22

Nixon, 729 So. 2d at 278-79. The Court then explained that "one of the stated purposes of the [AAPA] as a whole and of § 41-22-16 in particular is to ensure that final administrative decisions in contested cases are not unreasonably delayed." Id. at 279 (emphasis added). Thus, "the 30-day provision … relate[d] to the very essence of one of the primary objects the legislature sought to achieve by enacting the [AAPA] -- the issuance of final administrative decisions within a reasonable time." Id. (emphasis added). "Therefore, [the Court] conclude[d] that, in § 41-22-16(a), the word 'shall' is mandatory." Id. But see Howard, supra (rejecting the contention that the word "shall" in a timing provision in a tax-levying statute was "mandatory" and holding that the timing provision was "directory"). Even so, the Alabama Supreme Court held that the "mandatory" provision was not "jurisdictional." Id.

According to the Alabama Supreme Court, there was "nothing to indicate that the legislature intended to deprive the hearing officer of jurisdiction if the officer did not render a final order within 30 days after concluding the hearing." Nixon, 729 So. 2d at 279. Indeed, another statute within the AAPA provided that any

> "[u]nreasonable delay on the part of an agency in reaching a final decision [i.e., failure to render an order within 30 days

23

after the hearing is concluded] <u>shall be justification</u> for any person whose rights, duties, or privileges are adversely affected by such delay to <u>seek a court order compelling action by the agency</u>."

<u>Id.</u> at 279. In addition, another statute within the AAPA provided courts "discretion to reverse or modify the hearing officer's report if it was made in violation of statutory provisions." <u>Id.</u> at 280. Accordingly, the Alabama Supreme Court held that the timing provision was <u>not</u> jurisdictional, and it affirmed the judgment of the Court of Civil Appeals, upholding the order "[b]ecause Nixon ha[d] not shown that his substantial rights were prejudiced by DHR's 10-day delay in issuing its final order." <u>Id.</u> at 280. <u>See also</u> <u>M.H. v. Cleburne Cnty. Dep't of Hum. Res.</u>, 158 So. 3d 471, 476 (Ala. Civ. App. 2014) (holding that a juvenile court's entering of an order terminating a parent's rights more than 30 days after the completion of the trial, as required by statute, was not "a jurisdictional defect that rendered the juvenile court's judgments void").

Based on <u>Nixon</u>, even if we held that the "shall" language of § 15-13-3(b)(8) was "mandatory," the 48-hour timing provision is not jurisdictional because there is no indication that the Legislature intended noncompliance "to be fatal" to a court's <u>power</u> to deny bail. As already stated, § 15-13-3 does not provide any consequence for the failure

to comply with the 48-hour timing provision. Moreover, § 15-13-3(b)(7)b. expressly grants courts <u>continuing</u> jurisdiction to deny bail "<u>at any time prior to trial</u>." (Emphasis added.) As in <u>Nixon</u>, "[t]his provision would be meaningless if [it] … was jurisdictional." 729 So. 2d at 279-80. It simply does not logically follow that the Legislature intended noncompliance with the 48-hour timing provision to divest courts of their constitutional and statutory <u>power</u> to deny bail, particularly in this case, in which the court, one business day later, issued an order expressly finding that "no condition or combination of conditions of release will reasonably ensure [Bailey's] presence or protect the safety of the community." (Bailey's petition, Ex. E.) <u>See also</u> <u>United States v. Montalvo-Murillo</u>, 495 U.S. 711, 718 (1990) ("[T]he word 'shall' in the Act's hearing time requirement does not operate to bar all authority to seek pretrial detention once the time limit has passed. Although the duty is mandatory, the sanction for breach is not loss of all later powers to act.").

The United States Supreme Court's reasoning in rejecting a similar challenge to the Bail Reform Act of 1984 in <u>Montalvo-Murillo</u> is instructive.

> "[T]he word 'shall' in the Act's hearing time requirement does not operate to bar all authority to seek pretrial detention once

the time limit has passed.  Although the duty is mandatory, the sanction for breach is not loss of all power to act. ...

"...

"...Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee.  The end of exacting compliance with the letter of § 3142(f) cannot justify the means of exposing the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent.…  The Government's interest in preventing these harms remains real and substantial even when the time limits have been ignored.  The safety of society does not become forfeit to the accident of noncompliance with statutory time limits where the Government is ready and able to come forward with the requisite showing to meet the burden of proof required by the statute.

"...[T]here is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs."

495 U.S. at 718-20.

The separation-of-powers doctrine further compels our conclusion that the timing provision of § 15-13-3 is not jurisdictional.  If the Legislature had intended compliance with the 48-hour timing provision to "be a jurisdictional prerequisite, it most certainly could have stated that intention in the statute."  M.H., 158 So. 3d at 477.  "We do not agree

26

that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits." Montalvo-Murillo, 495 U.S. at 721. See also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 94 ("[A]n absent provision cannot be supplied by the courts."). In short, this Court will not substitute itself for the Legislature and judicially impose a remedy for noncompliance when the Legislature has failed to speak unless noncompliance offends minimum standards of due process, which provide the necessary constraint on the "indefinite" noncompliance about which Bailey expresses concern. (See Bailey's petition, p. 11 (asserting that noncompliance with the timing requirement must result in bail being set or "there would be no limitation to how long a person could be held without bail and without an order denying bail").)

In sum, it would thwart the very purpose of the statute, which is to ensure a defendant's appearance in court and protect the public's safety, if every failure to strictly comply with a timing provision divested the court of its power to deny bail. We thus reject such an interpretation of § 15-13-3(b)(8)'s timing provision.

## C.    Any timing error is harmless.

27

Finally, any error in the circuit court's failure to comply with the 48-hour timing provision was harmless. Again, on this point, we find the United States Supreme Court's decision in <u>Montalvo-Murillo</u>, 495 U.S. at 717 (holding that "a failure to comply with he first appearance requirement does not defeat the Government's authority to seek detention of the person charged") to be persuasive.

In <u>Montalvo-Murillo</u>, the United States Supreme Court considered "whether failure to comply with the prompt hearing provision of the [Bail Reform] Act [of 1984] requires the release of a person who is a flight risk or a danger to other persons or the community." 495 U.S. at 713.[3] There,

---

[3]The prompt-hearing provision of the Bail Reform Act of 1984 is nearly identical to § 15-13-3(b)(3), Ala. Code 1975, which provides that a pretrial detention hearing be held "immediately upon the defendant's first appearance before the court, unless the prosecuting attorney or the defendant requests a continuance." <u>See also</u> 18 U.S.C. § 3142(f). Likewise, § 15-13-3(b)(3) mimics the federal Bail Reform Act: "Except for good cause, a continuance on a motion of the defendant may not exceed five days, excluding Saturdays, Sundays, and state holidays, and a continuance on motion by the prosecuting attorney may not exceed three days, excluding Saturdays, Sundays, and state holidays." § 15-13-3(b)(3). <u>See also</u> 18 U.S.C. § 3142(f). Notably, the Bail Reform Act of 1984 does not provide a timing provision for the issuance of the detention order <u>after</u> the pretrial detention hearing. However, the factors to be considered in determining whether the person should be detained are also nearly identical. Both statutes also require a "detention order" under the Bail Reform Act or an "order denying bail" under Alabama's

the detention hearing was not held "immediately upon the defendant's first appearance before the court," 18 U.S.C. § 3142(f), but was instead held 11 days after the defendant's initial appearance. Id. at 715. The Supreme Court "recognize[d] that a vital liberty interest is at stake." Id. at 716. The Court also recognized that "[a] prompt hearing is necessary, and the time limitations of the Act must be followed with care and precision." Id. However, the Court further recognized that "the Act is silent on the issue of a remedy for violations of its time limits." Id. (emphasis added). "Neither the timing requirements nor any other part of the Act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained." Id. at 716-17. "There is no presumption or general rule that for every duty imposed upon court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if neglect." Id. at 717. The Supreme Court further recognized that "[a]n order of release in the face of the Government's ability to prove at once that detention is required by the law has neither causal nor proportional

---

statute to include "written findings" and a "statement of the reasons" for the denial of bail. Compare § 15-13-3(b)(5) and (8) with 18 U.S.C. §1342(g) and (i).

relation to any harm caused by the delay in holding the hearing." Id. at 721. Moreover, "[w]hen a hearing is held, a defendant subject to detention already will have suffered whatever inconvenience and uncertainty a timely hearing would have spared him." Id. "Release would not restore these benefits to him." Id. Thus, the Supreme Court held that, "[o]n these facts, the detention was harmless" because "it [wa]s clear that the noncompliance with the timing requirement had no substantial influence on the outcome of the proceeding." Id. at 722.

Likewise, because the circuit court issued an order finding that no condition or set of conditions would ensure Bailey's appearance in court or protect the public, "it is clear that the noncompliance with the timing requirement had no substantial influence on the outcome of the proceeding." Montalvo-Murillo, 495 U.S. at 722. "Because [Bailey] was dangerous and likely to flee, he would have been detained" had the court issued its order on Friday, July 19, 2024, instead of Monday, July 22, 2024. Id. "On these facts, the detention was harmless." Id.

In sum, statutory construction "must conform to the '"great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence

of the officers or agents to whose care they are confided."'" Id. at 718 (quoting Brock v. Pierce Cnty., 476 U.S. 253, 260 (1986), quoting in turn United States v. Nashville, C. & St. L. Ry. Co., 118 U.S. 120, 125 (1886)). See also Brock, 476 U.S. at 260 (footnote omitted) ("We would be most reluctant to conclude that every failure … to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act."). To allow Bailey to be released, after a court ruled that bail should be denied based on ample evidence and following a hearing (of which Bailey received notice and at which he had an opportunity to be heard) because of a court's minor delay in the issuance of its order denying bail would result in a "windfall" to Bailey and would cause the public to suffer a "severe penalty." Montalvo-Murillo, 495 U.S. at 718-20. Bailey suffered no harm from the delay, and, accordingly, Bailey "was not, and is not, entitled to release as a sanction for the delay." Id. at 722.

Although we find no error that justifies granting Bailey's petition, nothing in this Court's opinion is intended to condone the circuit court's

31

failure to comply with § 15-13-3(b)(8) and to issue its order within 48 hours of Bailey's detention hearing. Our holding is simply that the circuit court's weekend delay in issuing its order denying Bailey bail did not divest the court of its <u>power</u> to issue the order. We further note that, had the court continued to delay its decision, Bailey was not without recourse. In the event of noncompliance, "officials still may be compelled to perform the directory duty in the future." <u>Howard</u>, 198 So. 3d at 485. Bailey could have sought to compel the circuit court to issue its detention order by filing a petition for a writ of mandamus. Likewise, any concern that a court could grossly delay its order, which we note did not happen here, is unfounded because any delay is constrained by minimum standards of due process, an argument that Bailey has not raised in his petition to this Court.

## II. Sufficiency of the Court's Order

Bailey also argues that "the circuit court's order failed to provide any findings of fact … or reasons for denying bail." (Bailey's petition, pp. 14-15.) Bailey asks this Court to "remand this case with instructions for the circuit court to make written findings of fact and written reasons for denying bail." (Bailey's petition, pp. 16.)

Section 15-13-3(b)(8) provides: "In an order denying bail, the judge shall make written findings or state for the record findings of fact and a statement of the reasons for denying bail." The circuit court's written order stated:

> "This matter was before the Court for a pretrial detention hearing. All parties appeared. Mrs. Evans and Mrs. Crimiel represented the Attorney General's office, the Defendant was represented by the Public Defender's office, Attorney East. <u>The State's witness was Agent Reed, and Agent Goza</u>.
>
> "The Defendant is charged with Human Trafficking (DC-2024-901178) – NO BOND).
>
> "The purpose of this hearing was for the Court to hear testimony and evidence to assist the Court in determining whether there are any conditions or combination of conditions that would reasonably ensure the Defendant's appearance in Court or protect the safety of the community and of any person. <u>After hearing the information presented to the Court, the Court is convinced by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the Defendant's presence or protect the safety of the community</u>. Accordingly, bond will remain at a NO BOND."

(Bailey's petition, Ex. E (emphasis added).)

The circuit court's order stated that it relied on the testimony of the only two witnesses who testified at Bailey's detention hearing -- two law-enforcement officers who testified for the State. The 16-year-old victim

33

reported being slapped, drugged, and repeatedly raped by Bailey and multiple other men who paid Bailey to have sex with her. A sexual-assault examination revealed "bleeding" and "trauma," which corroborated her report. (Bailey's petition, Ex. H.; R. 18.) Two witnesses corroborated the victim's allegations. Bailey had also been recorded on jail telephone calls instructing someone to "find her," apparently referring to the victim. (Bailey's petition, Ex. H.; R. 28.) In addition, Bailey and his counsel acknowledged at the hearing that Bailey had been charged with committing first-degree human trafficking while free on bond for a first-degree-assault charge and that he was also charged with other offenses, including "a class B attempt to elude" law enforcement, again while out on bond for a first-degree-assault charge. (Bailey's petition, Ex. H.; R. 6-7, 44.) The only testimony that did not clearly support the denial of bail was Bailey's self-serving declaration to Agent Goza that the victim and two other women who corroborated her reports were "lying on him" and had broken into his residence, statements considered by the court before denying Bailey bail. Moreover, not only did Bailey's counsel acknowledge that the allegations were "heinous," but he candidly told the circuit court that, based on "this testimony that's

34

been presented," he was "not even asking" the court to stay within the bail schedule and "wouldn't dare ask [the court] to be below it." (Bailey's petition, Ex. H.; R. 45 (emphasis added).) Instead, Bailey's counsel merely asked for any bond that the court would consider and further asked the court to impose various and numerous restrictions on Bailey, including that he not be allowed around juveniles and should wear an ankle monitor. This testimony (and the acknowledgements by counsel) amply supported the circuit court's finding that there was "no condition or combination of conditions" that would "reasonably ensure the Defendant's presence or protect the safety of the community." (Bailey's petition, Ex. E.) Moreover, the testimony and acknowledgements of Bailey's counsel clearly satisfied each of the factors a court is to consider when determining whether to deny bail -- "[t]he nature and circumstances" of the first-degree-human-trafficking offense, "[t]he weight of the evidence," "[t]he history and characteristics of the defendant, including … whether, at the time of the current offense, the defendant was on … release pending trial … for an offense," and "[t]he nature and seriousness of the danger to any person or the community if the defendant is released." § 15-13-3(b)(5)(a)-(d).

In sum, the circuit court's written order, denying bail and stating that it relied upon the only two witnesses who testified (the State's two law-enforcement witnesses), combined with the transcript from the hearing together indicate that Bailey was sufficiently apprised of both the facts and reasons that supported the circuit court's denial of bail.

Our holding is supported by well-settled jurisprudence regarding the minimum requirements of due process. In Morrissey v. Brewer, 408 U.S. 471 (1972), the United States Supreme Court held that there were "minimum requirements of due process" applicable to parole revocations. One of those requirements is that there should be "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Id. at 489. Similar to § 15-13-3(b)(8), which addresses findings regarding the denial of bail, Rule 27.6(f), Ala. R. Crim. P., provides that a "judge shall make a written statement or state for the record the evidence relied upon and the reasons for revoking probation." In McCoo v. State, 921 So. 2d 450, 454 (Ala. 2005), the Alabama Supreme Court recognized that "the Court of Criminal Appeals should have the discretion to review ... a minimal and unambiguous record to determine if the trial court's written statement and its statement for the record,

read in the context of that record, unmistakenly declare the evidence relied upon and its reason or reasons for revoking probation." Id. at 462 (emphasis added). As in McCoo, we hold that the minimum standards of due process have been satisfied here. Considering both the transcript of the detention hearing and the court's written order, the record is "'sufficiently complete to advise the parties and the reviewing court of the reasons for the [denial of bail] and the evidence the decision maker relied upon.'" Id. at 462 (quoting United States v. Copeland, 20 F. 3d 412, 414 (11th Cir. 1994)).

Moreover, Bailey's reliance on United States v. Hurtado, 779 F. 2d 1467 (11th Cir. 1985), in arguing that a remand for a more specific statement is necessary is misplaced. Hurtado held that a "district court must undertake an independent review [of the grounds for detention], … enter its own findings in writing, and set forth the reasons supporting its decision," rather than issue "one sentence ratifying the findings of the magistrate." Id. at 1480-81. By contrast, the circuit court here did not adopt a recommendation from another judge but engaged in its own independent review of the evidence. Likewise, the circuit court issued a written order stating that it had relied on the State's two witnesses (the

37

only two witnesses to testify) and that, upon considering the information presented at the hearing (which was transcribed), it was "convinced by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure the Defendant's presence or protect the safety of the community." (Bailey's petition, Ex. E.)

Conclusion

In conclusion, Bailey has not established that he is entitled to have bail set because of the circuit court's failure to issue its order denying bail within 48 hours of his pretrial detention hearing. The circuit court's failure to comply with the timing provision did not deprive the circuit court of its power to deny bail, and Bailey was not harmed by the delay. Likewise, Bailey is not entitled to a remand for the circuit court to more specifically set out its fact findings and reasons for denying bail when the record "unmistakenly declares the evidence relied upon and … reasons for" denying bail. McCoo, 921 So. 2d at 462. We, thus, deny Bailey's petition.

PETITION DENIED.

Kellum and Minor, JJ., concur. Windom, P.J., and Anderson, J., concur in the result.